In re Laurie FLORIO, Debtor.

Marc FLORIO, Plaintiff,

v.

Laurie FLORIO, Defendant.

Bankruptcy No. 95–20064.
Adv. No. 95–2012C.

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Oct. 12, 1995.

Gwendolyn S. Froeschner, Columbia, MO, for plaintiff.

Christina Neff, Jefferson City, MO, for defendant.

John Reed, Trustee, Jefferson City, MO.

## ORDER

FRANK W. KOGER, Chief Judge.

This matter is before the Court on plaintiff Marc Florio's adversary complaint against debtor Laurie Florio, which requests the Court to find that Laurie's[1] indebtedness to him is nondischargeable, pursuant to 11 U.S.C. § 523(a)(15), and requests the Court to deny Laurie discharge, pursuant to 11 U.S.C. § 727 (1988). Laurie counterclaims, alleging that Marc owes her child support

and requesting the Court to enter a judgment against him.

## FACTS

Marc and Laurie were divorced in 1982. Laurie was given custody of the one minor child. Marc was ordered to pay $150 per month in child support. The parties stipulated at the hearing on this matter that Marc is in arrears in his child support obligation a total of $20,890.

The divorce decree ordered Laurie to pay Marc $5000 for five acres of land that she received in the property settlement. Laurie was also ordered to execute a note payable to Marc for $5000 bearing interest at fifteen percent and payable in sixty monthly payments. She made only a few of those payments. The parties stipulated that as of the date of the hearing, Laurie owes Marc $30,-919.97 on the note.

Laurie filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 3, 1995. Marc then filed this adversary complaint and Laurie filed her counterclaim. The Court held a hearing on the claims on September 12, 1995.

## DISCUSSION

### 1. Is Laurie's Debt to Marc Nondischargeable?

The first issue before the Court is Marc's claim that Laurie's debt to him is nondischargeable under § 523(a)(15). That statute provides that a Chapter 7 discharge does not discharge the debtor from any debt:

(a)(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent

1. Because the parties' surnames are the same, the Court will refer to them by their given names.

of the debtor and, if the debtor is engage in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

■ This Court has previously held that this statute creates a shifting burden between the plaintiff and the defendant debtor. *See Silvers v. Silvers (In re Silvers)*, 187 B.R. 648, 649 (Bankr.W.D.Mo.1995). The plaintiff must show that he holds a claim not of the kind described in subsection (a)(5) and that was awarded by a court in the course of a divorce or separation. *Id.* Marc has sufficiently shown this.

■ Once this is shown, the debtor bears the burden of going forward and making one of two showings. The first alternate showing is that she is unable to pay the debt from income or property not needed for the support of her child and herself and not needed to continue, preserve, or operate a business. The second is that discharging the debt would be more beneficial to her than detrimental to the plaintiff ex-spouse. *Id.* The debtor must make these showings by the preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

This Court discussed in *Silvers* some of the problems that arise from § 523(a)(15). Now the Court is faced with another problem: interpreting the meaning of the phrase "ability to pay such debt from income." The legislative history of this statute is quite sparse, as is case law interpreting the statute. Other courts have turned to § 1325(b)(2)'s definition of disposable income as an aide in determining a debtor's ability to pay a § 523(a)(15) debt. *See, e.g., Hill v. Hill (In re Hill)*, 184 B.R. 750, 755 (Bankr. N.D.Ill.1995). This Court, however, must answer a different question before reaching the issue of whether Laurie has sufficient disposable income to pay Marc. That question is to determine Laurie's earning capacity.

■ Thus far, this Court's sister courts are divided over whether a § 523(a)(8) analysis may be used in a § 523(a)(15) case. *Compare Comisky v. Comisky (In re Comisky)*, 183 B.R. 883, 884 (Bankr.N.D.Cal.1995) (applying § 523(a)(8) analysis to § 523(a)(15)) *with Hill*, 184 B.R. at 754 (rejecting § 523(a)(8) analysis in § 523(a)(15) case). This Court believes that under § 523(a)(15), its determination of a debtor's ability to pay must be made on a case by case basis and that § 523(a)(8) analysis is helpful.

In *O'Brien v. Household Bank FSB (In re O'Brien)*, 165 B.R. 456 (Bankr.W.D.Mo.1994), the court found that "whether the circumstances which led to [debtor's] unemployment were beyond her control or whether debtor willfully or negligently caused her unemployment which resulted in her inability to repay her student loans" was a significant factor in determining whether those loans were dischargeable. *Id.* at 460.

■ Here, when Laurie filed her petition in bankruptcy, she had a net income of $1579 per month, which was comprised of net earnings of $1292 and child support of $287. After filing her petition, she voluntarily left her job as a surgical technician to work at a dog grooming business that pays her no income. Laurie voluntarily reduced her income to zero postpetition and now asks the Court to find that she does not have the ability to pay a debt. The Court cannot sanction such behavior.

The Court therefore finds that Laurie is able to produce a net income of at least $1579 per month, including child support. This finding leads the Court into the inquiry of whether this potential income is sufficient to allow Laurie to pay her debt to Marc.

Laurie's amended expense schedule shows that she currently has only $477 a month in expenses. Laurie lives with a roommate and they operate the dog grooming business from their home. The testimony at the hearing indicates that the household expenses are divided among Laurie, her roommate, and the dog grooming business. The testimony also indicates that Laurie is not currently paying her one-third share of these expenses in exchange for her contributions to the busi-

ness. Thus, the Court assumes that if Laurie were to again earn $1579 per month, she would resume paying her one-third share of these expenses. The testimony and schedules indicate that her share of these expenses, including groceries, is approximately $600 per month. This increases her monthly expenses from $477 per month to $1077. With monthly income of $1579, Laurie would have over $500 a month in disposable income.

Laurie failed to show that she is unable to pay her debt to Marc. She is capable of earning $1579 a month, but voluntarily chose to reduce her income to zero. Her earning potential is more than adequate to give her the ability to pay her debt to Marc.

■ This finding, however, does not end the Court's inquiry. Although Laurie is able to pay this debt, the Court still may discharge the debt if discharge is more beneficial to her than detrimental to Marc. Other courts examining this issue have held that this test requires the court to weigh several factors and apply a totality of the circumstances test. Those factors include: The income and expenses of both parties, the nature of the debt, and the former spouse's ability to pay the debt. *See Hill v. Hill (In re Hill),* 184 B.R. 750, 756 (Bankr.N.D.Ill. 1995); *Carroll v. Carroll (In re Carroll),* 187 B.R. 197, 200–01 (Bankr.S.D.Ohio 1995).

■ Here, the relevant debt does not involve a third party creditor who would look to Marc for payment should the Court discharge this debt. Laurie, however, failed to show by a preponderance of the evidence that discharge would not be detrimental to Marc. Although the testimony indicates that Marc currently earns approximately $48,000 per year, nothing in the record indicates what Marc's expenses are and whether he needs the money Laurie owes him to meet his own debts.

Further, Laurie failed to show that she would properly benefit from a discharge of the debt. At least one court has found that equity weighs against discharge where the debtor has the ability to pay a debt under § 523(a)(15). *Carroll,* 187 B.R. at 201. "Discharging this obligation would simply provide Debtor with additional disposable income to

'use at his discretion.' This is not the type of benefit that § 523(a)(15)(B) ought to protect." *Id.* at 201.

Laurie has the ability to produce enough income to have at least $500 a month in disposable income. She has the ability to pay the debt and would receive an unfair benefit if the Court were to discharge it.

### 2. Should the Court Deny Laurie Discharge Pursuant to Section 727?

The next issue is Marc's request for the Court to deny Laurie a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(4)(D).

[8] To prevail on a claim that a debtor should be denied discharge under § 727(a)(2)(A), a plaintiff must show that the debtor committed certain acts—here, transferring property within one year before filing the petition—with the intention to hinder, delay, or defraud a creditor. Marc showed that Laurie held an interest in some real estate, which she gratuitously transferred to her roommate within one year preceding her petition. To prevail on this claim, however, Marc was required to prove that Laurie had, at the time of the alleged transfer, the intent to defraud her creditors. *Superior Nat'l Bank v. Schroff (In re Schroff),* 156 B.R. 250, 254 (Bankr.W.D.Mo.1993). In *Schroff,* the court listed ten factors to consider when determining whether a debtor intended to defraud creditors. *Id.* at 254. Laurie's transfer of this property involved some of these factors. Her testimony, however, was that she received the land in a gratuitous transfer from her roommate's mother and in return gratuitously transferred her interest to her roommate. The Court found nothing in this evidence to indicate that Laurie transferred this property with the intent to defraud her creditors.

■ Under § 727(a)(3), the plaintiff must show that the debtor concealed, destroyed, mutilated, falsified, or failed to maintain certain information. The purpose of this section is to " 'insure that the trustee and creditors have sufficient information to trace the debtor's financial history for a reasonable period past to present.' " *Case v.*

*Cheek (In re Cheek),* 157 B.R. 1003, 1018 (Bankr.E.D.Mo.1993) (quoting *In re Kassoff,* 146 B.R. 194, 200 (Bankr.N.D.Ohio 1992)). Marc does not point to any specific information that Laurie failed to disclose and the Court finds nothing in the evidence to indicate that Laurie has not provided the trustee or her creditors sufficient information about her financial affairs.

■ Sections 727(a)(4)(A) and (D) require a plaintiff to show that the debtor knowingly and fraudulently made a false oath or account, or withheld information relating to the debtor's property. Marc alleges that Laurie failed to list assets, failed to describe income, and failed to identify property transfers prior to filing her bankruptcy petition. Even if Marc successfully proved that Laurie committed any of these acts, there is no evidence that she did so knowingly and fraudulently.

*3. Should the Court Enter Judgment for Laurie Based on Marc's Past Due Child Support?*

■ Laurie's counterclaim against Marc alleges that he is in arrears with his court-ordered child support obligations and prays for this Court to enter judgment against Marc for the amount of the arrearage. This request is unnecessary. "Past due child support payments that are owed by a divorced father to the divorced wife pursuant to a court order for support payments and incorporated into the divorce decree constitute a debt so that accrued and unpaid installments become judgments in favor of the former wife." *Sagos v. Sagos,* 729 S.W.2d 76, 79 (Mo.Ct.App.1987). Thus, any child support payments that Marc has failed to pay have already become judgments in Laurie's favor.

■ The Court notes, however, that a periodic child support payment "is presumed paid and satisfied ten years from the date that the periodic payment is due unless revived. A judgment may be revived either by personal service made on the defendant or by 'a payment made on the judgment and "duly entered on the record thereof." ' " *State ex rel. Clatt v. Erickson,* 859 S.W.2d 239, 241–42 (Mo.Ct.App.1993) (quoting *Ferguson v. Ferguson,* 636 S.W.2d 323, 324 (Mo.1982) (quot-

ing Mo.Rev.Stat. § 516.350)); Mo.Rev.Stat. § 516.350 (1994).

■ Here, the child support payments were to begin in May 1982. The evidence indicates Marc made some payments in 1984 and 1985, and then paid nothing until July 1993. Since then, he has made regular payments. Assuming these payments were "duly entered on the record thereof," Marc's payment in July, 1993 revived all the monthly payments due back to July, 1983. *See Clatt,* 859 S.W.2d at 242. The payments made in 1984 and 1985 revived those payments due between May 1982 and July 1983.

*4. May Marc Set Off His Debt to Laurie Against Laurie's Debt to Marc?*

■ The last issue before the Court is whether Marc may set off as a recoupment his past due child support obligation against Laurie's debt due him. Recoupment requires that "the creditor ... have a claim against the debtor that arises from the same transaction as the debtor's claim against the creditor." *In re NWFX,* 864 F.2d 593, 597 (8th Cir.1989).

Here, both Laurie's debt to Marc and his debt to her arose out their divorce; however, this the Court may not allow the requested set off. *See Poland v. Poland,* 895 S.W.2d 670, 672 (Mo.Ct.App.1995) (holding former spouse could not set off past due child support obligations due former wife against debt wife owed to him even though debt arose out of divorce decree).

### CONCLUSION

Based on the above discussion, the Court finds that Laurie's debt to Marc is nondischargeable; that Marc failed to prove that Laurie should not receive a Chapter 7 discharge; and that Laurie's debt to Marc may not be set off as a recoupment against Marc's past due child support obligations due to Laurie. Marc still owes Laurie $20,890; Laurie still owes Marc $30,919.97, but Marc may not set off.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of

**660**

Law as required by Federal Rule of Bankruptcy Procedure 7052.

So ORDERED.