**In re Joseph L. TAYLOR, Debtor.**

**Janet L. TAYLOR, Plaintiff,**

v.

**Joseph L. TAYLOR, Defendant.**

**Bankruptcy No. 95 B 01185.
Adv. No. 95 A 00446.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 23, 1996.

Chester H. Foster, Jr., Foster & Kallen, Chicago, IL, for Debtor/Defendant.

Howard E. Gilbert, John H. Redfield, Skokie, IL, for Plaintiff.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of Janet L. Taylor ("Janet") pursuant to 11 U.S.C. § 523(a)(15) to determine the dischargeability of a debt owed to her by the debtor, Joseph L. Taylor ("Joseph"). For the reasons set forth below, the Court holds that the debt is dischargeable under § 523(a)(15)(B).

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334(b) and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

Most of the relevant facts and background are not in dispute. At trial, the parties stipulated to most of the facts contained herein. Joseph and Janet were married on October 2, 1983. There were no children from the marriage. Both were very successful in their joint business ventures, which produced relatively high incomes for them. *See* Janet's Exhibit No. 6. Their marriage failed, however, and thereafter, on March 8, 1991, a Judgment for Dissolution of Marriage was entered in the Illinois Circuit Court for

DuPage County. *See* Janet's Exhibit No. 3. Incorporated into the Judgment for Dissolution was a Marital Settlement Agreement. *Id.*

The subject debt owed to Janet by Joseph arose pursuant to Paragraph 3.3 of the Settlement Agreement, involving their marital residence which was to be listed for sale at $739,000. For several reasons, the residence did not sell until August 1993, for a greatly reduced price of $585,000, which left Joseph obligated to pay Janet the shortfall to be computed in the property settlement provisions of Paragraph 3.3 of the Settlement Agreement.

Pursuant to Paragraph 3.3, it was considered likely that the proceeds from the sale of the marital residence would be insufficient to pay Janet her reimbursements. Therefore, a promissory note was executed by Joseph on August 20, 1993 for the sum of $52,702.24 bearing interest at the rate of 10% and attorney's fees and costs for collection. *See* Janet's Exhibit No. 4. The note became due on August 20, 1994. *Id.* The balance claimed due on the promissory note through the end of December 1995 is $59,047.28, exclusive of Janet's attorney's fees.

Joseph's financial situation and income deteriorated subsequent to the marital dissolution. *See* Janet's Exhibit Nos. 6 and 7. By January 19, 1995, Joseph had reached the point where he filed a voluntary Chapter 7 bankruptcy petition with attendant schedules of assets and liabilities and a statement of his affairs. *See* Janet's Exhibit No. 1 and Joseph's Exhibit No. 5. Those papers revealed, among other things, that his income had precipitously further declined in 1993 and 1994; he was a defendant in several lawsuits; he scheduled and valued his property at $1,400.00; he listed his debts totaling over $900,000, including the subject unsecured debt owed to Janet; and he scheduled his net take home pay at $2,878.34 per month and his current average monthly expenditures at $2,960.00. *Id.*

Janet asserts that the subject debt is nondischargeable under § 523(a)(15) and seeks to also recover interest accrued thereon, plus her attorney's fees. The Court held a trial on December 18, 1995. At trial it was estab-

lished that Joseph's compensation was in the nature of a recoverable commissions draw based on sales produced through his work as a senior accounts manager. *See* Janet's Exhibit Nos. 11, 12, and 13. Joseph had monthly draw increases twice in 1995 for gross draws of $5,000 and $6,000. *See* Janet's Exhibit No. 12. Janet projected Joseph's future monthly budget to include a net income of $5,333.18 and necessary living expenses totaling $2,239.00, with a monthly surplus of $3,094.18. *See* Janet's Exhibit No. 16.

In marked contrast, Janet's post-dissolution income, though slightly declining, has been many multiples of Joseph's. *See* Joseph's Exhibit Nos. 1–3. Janet's business involves contracting computer programmers as consultants in which she has been undisputedly very successful. Her confidential personal financial statement as of July 1, 1995, shows her to be a very solvent and relatively well to do individual. *See* Joseph's Exhibit No. 4. It is undisputed that Janet's financial condition is far above that of Joseph's financial situation. Janet's deposition testimony included her candid admission that the detrimental consequence to her if Joseph does not have to repay her the subject debt "will be psychological more than anything else." *See* Joseph's Exhibit No. 6, p. 69.

By the time of trial, Joseph testified that he had purchased a new car and began accumulating 10% of his compensation in a tax-sheltered retirement plan commonly referred to as a 401K plan, which contains approximately $6,000. Joseph stated, however, that he lacks sufficient assets to pay the full amount owed Janet and it would be a hardship for him to satisfy her claim.

## III.  *APPLICABLE STANDARDS*

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983). The burden of proof required for establishing an exception to discharge is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). To further the policy of providing the debtor a fresh start in bankruptcy, exceptions to

discharge are construed strictly against the creditor and liberally in favor of the debtor. *Meyer v. Rigdon,* 36 F.3d 1375, 1385 (7th Cir.1994); *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985).

The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (Oct. 22, 1994), created § 523(a)(15) to except from discharge certain obligations in the nature of marital property settlements which are not in the nature of alimony or support. Section 523(a)(15) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit *unless*—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; *or*

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15) (emphasis supplied).

■ The legislative history of this statute is sparse, as is the recent evolving case law interpreting the statute. The legislative history of § 523(a)(15) indicates that "[t]his subsection will make [property awards] nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts." 140 Cong.Rec. H10752, H10770 (daily ed. Oct. 4, 1994) (statement of Chairman Brooks). In apply-

ing § 523(a)(15), courts must determine whether "paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents ... [or whether] a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation...." *Id.* Congress cautions that the debtor's discharge should only be denied if the detriment suffered by the nondebtor spouse substantially outweighs the debtor's need for a fresh start. *Id.*

■ In order to except the debt from dischargeability under § 523(a)(15), Janet must establish that she holds a claim against Joseph other than the kind described in § 523(a)(5), that was awarded by a court in the course of a divorce proceeding or separation. *See Silvers v. Silvers (In re Silvers),* 187 B.R. 648, 649 (Bankr.W.D.Mo.1995). That has been done in this matter and is not in dispute. Once Janet demonstrates this, the burden of coming forward shifts to Joseph to show either (1) that he lacks the ability to pay the debt from income or property not needed to support himself and any dependents, or (2) that the discharge would be more beneficial to Joseph than detrimental to Janet. *Hill v. Hill (In re Hill),* 184 B.R. 750, 753–54 (Bankr.N.D.Ill.1995); *Florio v. Florio (In re Florio),* 187 B.R. 654, 657 (Bankr.W.D.Mo.1995); *Phillips v. Phillips (In re Phillips),* 187 B.R. 363, 368–69 (Bankr. M.D.Fla.1995); *Silvers,* 187 B.R. at 649 (burden of going forward, not burden of proof shifts to the debtor); *Carroll v. Carroll (In re Carroll),* 187 B.R. 197, 200 (Bankr. S.D.Ohio 1995); *Collins v. Hesson (In re Hesson),* 190 B.R. 229, 239–40 (Bankr.D.Md. 1995) (the burden of going forward and the burden of proof is bifurcated—if the debtor can show inability to pay the debt the examination stops; if debtor can make the payment, then plaintiff has the burden to show that the detrimental consequences outweigh the benefit to the debtor). *But see Becker v. Becker (In re Becker),* 185 B.R. 567, 569 (Bankr.W.D.Mo.1995) (burden of proof shifts to the debtor after creditor brings dischargeability action under § 523(a)(15)); *contrast Kessler v. Butler,* 186 B.R. 371, 375 (Bankr. D.Vt.1995) (the creditor bears the burden of

persuasion; disagrees with *Becker* that § 523(a)(15) creates a rebuttable presumption that property settlements are nondischargeable unless the debtor can prove two exceptions). The whole area of which party has what burden under § 523(a)(15) is clearly in need of legislative remediation and clarification.

Generally, the party seeking an exception to the discharge bears the burden of proof by a preponderance of the evidence. *Grogan,* 498 U.S. at 286–87, 111 S.Ct. at 659–60. To discharge certain debts, such as student loans, however, the Bankruptcy Code shifts the burden to the debtor to prove entitlement to discharge. *See* 11 U.S.C. § 523(a)(8). Judge DeGunther in the *Hill* case held that § 523(a)(15) requires a debtor to prove entitlement to the exception. 184 B.R. at 753–54. *Accord Phillips,* 187 B.R. at 368. *Compare Butler,* 186 B.R. at 375. *Hill* further held that "[t]he burden shift amplifies the policy that even though the debtor ordinarily is entitled to a discharge of debts in bankruptcy, the debtor must at times show he or she is deserving of the dischargeability of a particular debt." 184 B.R. at 754.

Section 523(a)(15) is concerned with the relative positions of the parties at the time of the bankruptcy not at the time of the dissolution. *Becker,* 185 B.R. at 570. At what point in time during the bankruptcy is not precisely spelled out in the statute. Is it at the time of the petition filing; the time the dischargeability complaint is filed, *see Hill,* 184 B.R. at 754; the time of trial, *see Hesson,* 190 B.R. at 237–38; the time of entry of discharge; or some other time before the case is closed? Unfortunately there is no rule, like Federal Rule of Bankruptcy Procedure 4005,[1] which assigns such burdens or pinpoints the time when the determinations are to be made under § 523(a)(15).

Based on the record in this matter the Court need not enter the fray and make the tricky distinction of assigning who has the burden of proof as opposed to the burden of coming forward with the evidence, or what is the proper point in time to make the determinations. Regardless of the identity of the party who brings the evidence into the record, for Joseph to have the subject debt covered by his discharge, the evidence must show either that Joseph cannot pay the debt or that his nonpayment of the debt does not impose a detriment on Janet that outweighs the benefit of his discharge. Joseph must meet the showing required on only one of the two prongs of § 523(a)(15) to prevent the debt from being excepted from discharge, *Carroll,* 187 B.R. at 201; *Collins v. Florez (In re Florez),* 191 B.R. 112, 115–16 (Bankr. N.D.Ill.1995) (involving only § 523(a)(15)(A)), because the two prongs of § 523(a)(15) are linked with the disjunctive "or" rather than the conjunctive "and." [2]

Under § 523(a)(15)(A), *Hill* utilized the disposable income test of 11 U.S.C. § 1325(b)(2) [3] to aid the Court in its determination of whether the "debtor does not have the ability to pay." 184 B.R. at 755. The disposable income test analyzes "whether the debtor's budgeted expenses are reasonably necessary." *Id. Hill's* approach was followed by *Phillips,* 187 B.R. at 368–69 and *Hesson,* 190 B.R. at 237–38. *See also Woodworth v. Woodworth (In re Woodworth),* 187 B.R. 174, 177 n. 1 (Bankr.N.D.Ohio 1995). The Court agrees and will follow the *Hill* court's utilization of this standard for purposes of § 523(a)(15)(A). This makes both practical and logical sense. It is practical because most Chapter 7 debtors do not have

---

**1.** Bankruptcy Rule 4005 speaks to the burden when a creditor objects to a debtor's discharge and provides that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." FED. R.BANKR.P. 4005.

**2.** *Florez* also correctly noted that § 523(a)(15) does not contain or contemplate a provision for an award of attorney's fees to a prevailing party. Section 523(d) only references § 523(a)(2) actions for such awards. *Id.* at 116.

**3.** Section 1325(b)(2)(A) provides:

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependant of the debtor....

11 U.S.C. § 1325(b)(2)(A).

the available cash on hand to presently satisfy such claims in one lump sum and at the same time meet their current living expenses—lack of cash to pay all claims now or in the near future is why so many debtors file for relief under Chapter 7. It is also logical because the relevant statutory language of § 523(a)(15)(A) is identical to that contained in § 1325(b)(2)(A) and (B).

▌ Turning to § 523(a)(15)(B), the legislative history reveals that if discharging the debtor would inflict little or no detriment on the nondebtor spouse the debt must be discharged. Specifically it provides:

> For example, if a nondebtor spouse would suffer little detriment for the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

140 Cong.Rec. H10752–1 (daily ed. Oct. 4, 1994). Courts examining the issue have weighed several factors and applied a totality of the circumstances test. Those factors include: (1) the income and expenses of both parties; (2) the nature of the debt; and (3) the former spouse's ability to pay. *See Hill,* 184 B.R. at 756; *Florio,* 187 B.R. at 658; *Carroll,* 187 B.R. at 200–01. All of those factors have been considered here. Several courts have found that equity weighs against discharge where the debtor has the ability to pay a debt. *Carroll,* 187 B.R. at 201 ("Discharging this obligation would simply provide Debtor with additional disposable income to 'use at his discretion.' This is not the type of benefit that § 523(a)(15)(B) sought to protect."); *Florio,* 187 B.R. at 658 (quoting *Carroll*).

▌ Another unresolved dilemma is whether the statute provides for an all or nothing result, or whether part of the debt can be discharged with the rest excepted. *Compare Silvers,* 187 B.R. at 649 (an "all or nothing situation") *with Comisky v. Comisky*

*(In re Comisky),* 183 B.R. 883, 884 (Bankr. N.D.Cal.1995) (fashioned an equitable remedy of partial rather than full discharge of the debt). Most cases follow the all or nothing approach. The statute makes no provisions for determining that a part of a debt may be found dischargeable, but the remainder nondischargeable. Thus, the Court declines to follow the *Comisky* approach and attempt to forge an equitable middle ground in this matter. The morass of § 523(a)(15) is difficult enough to judicially navigate, and Congress needs to provide much needed legislative remediation.

## IV. DISCUSSION

Janet contends that Joseph has sufficient disposable income in excess of his necessary living expenses to repay the debt over time, not in a lump sum, especially if he leased a less expensive apartment and car. She concludes that her success and more advantageous economic position should not afford him a defense to her claim.

Joseph contends that he does not have the ability to pay the claim and that the detriment to Janet in his not having to pay the claim is clearly outweighed by his need of a fresh start afforded by the discharge of 11 U.S.C. § 524. He concludes that Janet's continued success post-dissolution, in contrast to his business related failures and reverses, which led to his bankruptcy, clearly requires the balancing under § 523(a)(15)(B) to tip in his favor.

▌ Pursuant to § 523(a)(15)(A), Joseph must prove that he is unable to pay the claim. He did not have sufficient cash or liquid assets to pay it in a lump sum either at the time he filed the Chapter 7 petition, at the time the complaint was filed, or at the time of trial. That does not end the inquiry, however, because the statute does not fix one particular point in time in which a debtor's ability to pay is to be determined. Hill selected the time the complaint was filed without any discussion or explanation. 184 B.R. at 754. *Hesson,* on the other hand, utilized the date of trial as the proper point to measure the debtor's ability to pay. 190 B.R. at 237–38. In referencing income and

tracking the language of § 1325(b)(2)(A) and (B), a more appropriate construction of § 523(a)(15)(A) requires the Court to consider Joseph's future ability to pay the claim over time, as well as his ability at the time he filed the bankruptcy petition. By the time the complaint was filed, and thereafter at the time of trial, Joseph's income had substantially increased, he had moved into a larger and more expensive apartment, and he had bought a new car. His total monthly income now exceeds his monthly living and business expenses and he is able to channel approximately 10% of his income into a retirement plan. He still cannot pay Janet's claim in one lump sum, but he could pay it in installments. The Court rejects Joseph's argument that he does not have the ability to pay the debt from his future income. Therefore, the Court rejects Joseph's position that he lacks the ability to pay the debt for purposes of § 523(a)(15)(A). This conclusion does not end the inquiry because § 523(a)(15)(A) is connected with the disjunctive "or" to § 523(a)(15)(B).

Pursuant to § 523(a)(15)(B), the Court must determine whether the benefit of Joseph's discharge outweighs any detriment Janet might suffer if the debt is not paid. In light of the relative economic and financial situations of the parties, it is clear that the economic benefit to Joseph of not excepting the debt from the fresh start afforded by his discharge outweighs the psychological detriment and the economic loss suffered by Janet in not being able to collect the debt from him. Moreover, the policy favoring discharge and narrowly construing and applying discharge exceptions is further served by the Court finding in Joseph's favor under § 523(a)(15)(B). Joseph is restarting the rest of his life and discharging the debt provides him a benefit, which under the totality of the evidence, outweighs the detrimental consequences to Janet of his nonpayment.

This matter is really at the other end of the spectrum from the situation in Hill where the nondebtor spouse, like the debtor, was insolvent in the equity sense and both were in need of relief under the Bankruptcy Code. At trial, both Joseph and Janet were gainfully employed, earning more than their necessary living expenses, with no other dependants. Perhaps from a purely economic approach, if the nondebtor spouse is better off than the debtor, either from comparing their respective balance sheets or income and expense statements, § 523(a)(15)(B) requires the result obtained here—the nondebtor party loses. Joseph's attorney conceded as much in his closing argument. That result could change in other cases if the evidence showed some horrible noneconomic detriment (to health, liberty, or something else of great material value to the nondebtor party—the statute does not define the terms "benefit to the debtor" or "detrimental consequences" to the nondebtor). In any event, on this record, Janet loses in this matter under § 523(a)(15)(B).

## V. CONCLUSION

For the foregoing reasons, the Court holds that the debt is dischargeable under § 523(a)(15)(B).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

## ORDER

For the reasons set forth in a Memorandum Opinion dated the 23rd day of January, 1996, the Court holds that the debt owed by Joseph L. Taylor to Janet L. Taylor is dischargeable under 11 U.S.C. § 523(a)(15)(B).