**In re Sim Michael GAMBLE, Debtor.**

**Arcina Ann GAMBLE, Plaintiff,**

v.

**Sim Michael GAMBLE, Defendant.**

**Bankruptcy No. 295–20410.**
**Adv. No. 295–2041.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

March 15, 1996.

former husband, Sim Michael Gamble (Mr. Gamble), in their divorce proceeding declared nondischargeable in his bankruptcy case[1] pursuant to § 523(a)(15) of the Bankruptcy Code.[2]

## BACKGROUND

■ The historic purpose of bankruptcy is for honest, but insolvent, debtors to get a fresh start in their financial lives. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Congress set forth certain activities which prevent a person from getting a discharge. § 727. Congress also designated certain debts which a debtor should pay, even though the debtor gets a discharge in bankruptcy. § 523(a). Obligations for alimony, maintenance, and support are excepted from discharge by § 523(a)(5). In the 1994 amendments to the Bankruptcy Code, Congress added subdivision (15) to § 523(a). This new addition prohibits discharge of divorce-created property settlement obligations, with certain exceptions, and reads:

§ 523. **Exceptions to discharge.**

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt

. . . .

(15) ... that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business,

Chad Williams, Seymour, TX, for Arcina Ann Gamble.

David Jones, Sprouse, Mozola, Smith & Rowley, Amarillo, TX, for Sim Michael Gamble.

## MEMORANDUM OF OPINION ON DISCHARGEABILITY OF PROPERTY SETTLEMENT

JOHN C. AKARD, Bankruptcy Judge.

Arcina Ann Gamble (Mrs. Gamble) seeks to have a $100,000 note (and the resulting state court judgment) given to her by her

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(I).

2. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

In this case, the court must resolve the tension which exists between the debtor's fresh start and the nondischargeability of property settlement obligations. The arguments focus on the exceptions contained in § 523(a)(15)(A) and (B).

## FACTS

Mr. & Mrs. Gamble's marriage of approximately 23 years ended in divorce on August 6, 1990. There were no children of the union. Mr. Gamble was represented by an attorney in the divorce proceedings. Mrs. Gamble did not have an attorney. The divorce decree divided the community property and community debts. Among the property awarded to Mrs. Gamble, the decree listed

Note executed by Sim Michael Gamble payable to the order of Arcina Ann Gamble in the amount of $100,000.00, bearing no interest, and due on or before three (3) years from date, this note to be secured by an assignment of the Phoenix Mutual life insurance policy on the life of Sim Michael Gamble.

Mrs. Gamble owns the Phoenix Mutual life insurance policy which has a face amount of $66,000 and a present cash value of $20,000. Mrs. Gamble paid the premiums on the policy after the divorce.

Mr. Gamble did not pay the note. On August 3, 1995 (approximately two years after the note became due) the divorce court granted Mrs. Gamble a judgment on the note against Mr. Gamble in the amount of $115,000 plus $500 attorney's fees. The judgment did not mention interest, so it is not clear if interest accrues on the judgment. On September 1, 1995 Mr. Gamble filed for protection under Chapter 7 of the Bankruptcy Code. On January 8, 1996 he received a discharge of all his debts except the debt involved in this adversary proceeding.

Mr. Gamble is President of Security State Bank of Quanah, Texas. His salary is $61,000 per year plus health insurance and the use of the bank's vehicle. He does not have a retirement plan. He has been diabetic for ten years and has had one heart attack. He anticipates that he will have to undergo a heart bypass operation at an undetermined date in the future. His present wife is the elected county tax assessor/collector who has a net salary of $1,200 per month.

The budget which Mr. Gamble presented did not include his present wife's income. He stated that she used her income for her expenses and to assist her adult son and two grandsons. There is no indication that the son and grandsons live with Mr. Gamble and his present wife. Mr. Gamble's budget appeared to cover the rent, utilities, and food for himself and his present wife. He acknowledged that his allowances for laundry and cleaning, clothing, and entertainment are higher than average, but explained that they were necessary because of his position as a bank president. His budget shows an excess of income over expenses of approximately $300 per month.

Mr. Gamble borrowed $100,000 from his father to pay debts which Mr. Gamble was obligated to pay by the divorce decree. The debt to his father was discharged in this bankruptcy proceeding. Mr. Gamble's budget shows a payment of $300 per month to his father. Mr. Gamble characterized this as a partial interest payment on the debt. He testified that his father has a small farm and needs this monthly payment to live on. He stated that his sisters are not financially able to assist their father. Mr. Gamble testified that during his marriage to Mrs. Gamble, they lived on his salary and her inheritance. They made a number of bad investments resulting in losses of more than $225,000.

In 1985 Mr. and Mrs. Gamble lived in Abilene, Texas where he was employed by Commodore Savings and Loan. He was contacted about purchasing some stock in and becoming the president of the Security State Bank of Quanah. When his job at Commodore Savings was terminated, the Gambles

decided to accept the offer to move to Quanah. They purchased $216,000 in bank stock with notes payable and cash from Mrs. Gamble's inheritance. Ultimately they paid off the notes with the proceeds of the sale of their Abilene house (the purchase of which had been largely financed from Mrs. Gamble's inheritance) and other monies provided by Mrs. Gamble. Mr. Gamble received the bank stock in the divorce. He testified that the bank had lost money for the past ten years. Thus, the value of the stock had declined greatly.

Mr. Gamble stated that the $100,000 obligation in the divorce decree was his idea. He thinks that if he had not offered it, the provision for the note would not have been in the divorce decree, but that the other provisions of the decree would have been the same.

Mrs. Gamble did not receive any of the proceeds of the sale of their house in Quanah when it was sold following the divorce. She now lives in rented quarters in Quanah. She did not complete college. She is employed as a teacher's aide at an annual salary of $7,600. She works at part-time jobs both during the school year and the summer. She has a small business which is used primarily to allow her to go to market and purchase things for herself.

Mrs. Gamble inherited 100 acres of land from her grandfather. When her father died in 1980, he left his entire estate to her, subject to a life estate in some of the property in favor of her mother. Through a series of transactions, Mrs. Gamble's mother has transferred all of her property to Mrs. Gamble. As a result of these transactions, Mrs. Gamble owns:

1. A stock brokerage account valued at $147,000.

2. Approximately 185 acres of land valued between $43,000 and $55,000 which is subject to a $42,000 lien. The annual rental on the acreage is less than the annual mortgage payment.

3. A note receivable secured by 107 acres of land having a balance of $25,000 and an annual payment of $3,500.

4. Approximately 970 acres of land valued between $242,000 and $291,000, which is leased for $18,000 per year.

Mrs. Gamble's mother is in her 70's. Her sole remaining income is social security. She has recently remarried. Since Mrs. Gamble is an only child, she is concerned that she will be called upon to support her mother.

## DISCUSSION

### Burden of Proof

■ This court agrees with those courts which hold that the language of § 523(a)(15) sets up a rebuttable presumption that any property settlement obligation arising from a divorce is nondischargeable unless the debtor can prove that one of the two exceptions in subdivisions (A) or (B) apply. *See, e.g., Becker v. Becker (In re Becker),* 185 B.R. 567, 569 (Bankr.W.D.Mo.1995). Once the former spouse brings a timely dischargeability action under § 523(a)(15), the burden shifts to the debtor.

### Ability to Pay

■ The subdivision (A) exception concerns the debtor's ability to pay the obligation. Mr. Gamble decided that issue when he determined he could pay the debt and signed the note in 1990. The obligation was carried forward into the divorce decree, but it was a consensual decree. Mr. Gamble was the one who appeared and testified at the divorce hearing and he was the only party represented by an attorney.

■ This court agrees that the determination under § 523(a)(15) must be made at the time of the bankruptcy and not at the time of the divorce. *Id.* at 570. However, Mr. Gamble's financial condition has not deteriorated since the divorce. It has improved. There is no indication that his salary has been reduced;[3] he has satisfied a large number of substantial obligations; his remaining obli-

---

**3.** Mr. Gamble testified that his salary was reduced by $4,000 per year when the bank decided to furnish him a vehicle. The court does not consider that a reduction in salary because he was given exclusive use of a new vehicle (the vehicles are replaced every year or two) and he sold his personal vehicle.

gations were discharged in this bankruptcy; and his current wife has take-home pay of $1,200 per month which could be used to defray household expenses.

■ In view of the Congressional mandate that property settlement obligations should not be discharged, a debtor should not be allowed to manipulate his/her financial condition to the detriment of a former spouse. *Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr.W.D.Mo.1995). In the time between the divorce and bankruptcy Mr. Gamble paid off several substantial .obligations, including some to banks and mortgage companies. Mr. Gamble's schedules in this bankruptcy show no priority debts (such as taxes) and $221,234.38 in unsecured debts consisting of $104,184.99 to his father (which he proposes to pay, even though the debt is discharged), $17,049.39 arising out of a failed partnership venture, and the $100,000 debt to Mrs. Gamble. From these facts, the court concludes that Mr. Gamble manipulated his financial condition to try to defeat his former spouse.[4] It is indeed unfortunate that immediately after the divorce Mr. Gamble did not begin making monthly payments on this debt. Since it did not bear interest, the debt could have been paid, or at least substantially reduced, by this time.

### Benefit/Detriment

■ Clearly discharge of this indebtedness would benefit Mr. Gamble and make his life easier. On the other hand, although she has income from property given to her by her mother, Mrs. Gamble's annual income is not as great as Mr. Gamble's income and she anticipates having to care for her mother in the near future. Because she lacks a college degree, Mrs. Gamble's earning capacity is severely limited. She is already working several jobs. The court holds that the benefit of a discharge of this debt to Mr. Gamble does not outweigh the detriment to Mrs. Gamble.

JUDGMENT ACCORDINGLY.[5]

---

4. Although it was not a factor in the court's decision, the testimony showed that Mr. Gamble would not have his present position if Mrs. Gamble's separate funds had not purchased the bank stock as part of the "package."

5. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052. This Memorandum will be published.