**In re FARMER, Daniel H., Debtor.**

**Norman D. Levin, P.A., Plaintiff,**

**v.**

**Daniel H. Farmer, Defendant.**

**Bankruptcy No. 98–10764–6J7.
Adversary No. 99–0008.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

March 31, 2000.

Kenneth D. Herron, Jr., Wolff, Hill, McFarlin & Herron, PA, Orlando, FL, for debtor.

Marie E. Henkel, Orlando, FL, Chapter 7 Trustee.

Lawrence M. Kosto, Kosto & Rotella, P.A., Orlando, FL, for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DETERMINATION OF DISCHARGEABILITY OF NON–SUPPORT DEBT

KAREN S. JENNEMANN, Bankruptcy Judge.

This adversary proceeding came on for trial on January 5 and 7, 2000. The sole issue is whether attorney fees incurred in connection with a divorce action are dischargeable pursuant to Section 523(a)(15) of the Bankruptcy Code. After reviewing the pleadings, the evidence, and the arguments of the parties, judgment is entered in favor of the Plaintiff.

*Debtor's Business.* The debtor, Daniel H. Farmer (the "Debtor"), is an architect. In 1989, he started his own business, CKA, Inc. Over the years, the business grew, and in 1993, the Debtor added a partner and changed the name of the business to Farmer & Baker Architects, Inc. In 1993, the gross sales of the business totaled $618,405. By 1995, gross sales had increased to over $1.4 million. The Debtor had a 40% interest in Farmer & Baker Architects, Inc.

*Divorce.* In 1996, the Debtor's wife filed a petition to dissolve their long-term marriage. The divorce was unusually acrimonious. On April 3, 1997, the state court handling the divorce action refused to allow the Debtor to sell his 40% interest in Farmer & Baker Architects, Inc. However, approximately 30 days later, instead of selling the business, the Debtor voluntarily agreed to liquidate his interest in the business in exchange for a payment of approximately $231,000.

The Debtor's former partners, Mr. Baker and Mr. DeLater, and a new partner, Mr. Barrios, immediately formed a new corporation known as Farmer, Baker & Barrios Architects, Inc. The Debtor is the first person listed in the name of the new company created on May 5, 1997. The company utilized the same employees, obtained business from the same clients and under the same contracts, continued to operate out of the same offices, and, in all material respects, was a continuation of the former Farmer & Baker Architects, Inc. The only significant difference was that the Debtor was no longer a partner in the business.

The state court in the divorce action found that Mr. Farmer had orchestrated the liquidation of his prior company in order to become voluntarily underemployed and to intentionally deprive his wife and her counsel of needed assets and income. The Final Judgment containing these findings was entered in the divorce action on July 15, 1998 (the "Final Judgment"). In the Final Judgment, the state court awarded the wife substantial periodic permanent alimony of $3,500 a month, child support of $1,500 a month for the two minor children, and an equitable distribution which included a payment of $125,000

for the wife's portion of the interest in her husband's architectural firm.

Farmer, Baker & Barrios Architects, Inc., the newly formed corporation, was immediately successful upon its incorporation. In the first month, the company showed a profit of over $30,000 and obtained revenue of over $200,000. In 1998, the firm earned gross sales revenue of almost $4 million. For the period ending September 30, 1999, the balance sheet reflects that the firm has retained earnings of approximately $1.6 million dollars. Obviously, the Debtor voluntarily forfeited an ownership interest in a very valuable business.

*Bankruptcy.* The Debtor filed this Chapter 7 bankruptcy proceeding on December 7, 1998. The state judge had not yet ruled on attorney fees and costs incurred in the divorce. The Debtor also had missed his initial installment payment on the $125,000 equitable distribution due to his former wife.

The wife's former attorney, Norman D. Levin, P.A., the Plaintiff in this adversary proceeding, moved for relief from the stay to permit the state court to award attorney fees and costs in connection with the divorce action. The motion was granted. The case was returned to the state court to allow the state court judge to liquidate the attorney fees and to determine the character of the claim as follows:

If the character of the attorneys fee claim(s) is found by the state court to be in the nature of alimony, maintenance or support or related to alimony, maintenance or support, the stay is hereby modified to permit the Movant Norman D. Levin, P.A. to take whatever action is allowed by state law to enforce any attorneys fee obligation the state court finds to be in the nature of alimony, maintenance or support or related to alimony, maintenance or support.

To the extent the character of any attorneys fee obligation is found to be in the nature of property settlement or primarily related to property settlement, the lifting of the stay hereby shall not permit the Movant Norman D. Levin, P.A. to enforce said obligation without further order of this Court, as to such obligation(s) found to be in the nature of property settlement or primarily related to property settlement, and as to that particular claim for attorneys so found, shall be referred to the bankruptcy court for a determination as to whether said claims to be dischargeable or excepted from discharge.

The intent of the Order Granting the Motion for Relief From Stay was to allow the state court to determine all issues relating to dischargeability under Section 523(a)(5) but to reserve ruling to the bankruptcy court for all issues if any, related to Section 523(a)(15) of the Bankruptcy Code.[1]

The state court promptly issued its ruling that awarded total attorney fees in the amount of $73,000 and costs in the amount of $33,771.41. Seventy percent of the fees was attributable to alimony, support and maintenance obligations. The remaining 30% of the fees and a delineated portion of the costs were determined to be attributable to equitable distribution or property settlement. Further, the state court held that, "After careful consideration of financial resources of both parties, pursuant to 61.16 Florida Statutes (1997), the Court has determined that the husband should be required to pay the attorney fees and costs incurred by the wife." Further, the court in the related transcript ruled that the Debtor "is clearly, voluntarily underemployed at this point, that his income is clearly voluntarily understated, that based on his past income and the income of the business, he has the clear, apparent ability to pay the attorney fees at 100%, and the Court deems that he has the ability and

---

1. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

the wife has a clear need to have these fees paid." (Transcript, pps.7–8). Thereafter, the state court judge determined that the portion of the fees and costs related to alimony and support were nondischargeable pursuant to Section 523(a)(5).[2] The only remaining issue is whether the fees and costs attributable to the property settlement portion of the award is dischargeable under Section 523(a)(15). The exact amount of the remaining fees and costs, after reflecting all credits due to the Debtor, are fees in the amount of $21,900 and costs in the amount of $15,706.34 for a total requested award of $37,606.34 (the "Fees").

Schedules I and J filed in connection with the trial of this adversary proceeding indicate that the Debtor has annual income of approximately $100,000. (Debtor's Ex. No. 2.) The Debtor's current monthly income is approximately $8,300, the majority of which is used for alimony, child support, and payment of his former wife's attorney fees. The Debtor is required to pay permanent alimony of $3,500 per month to his former wife, child support of $1,500 per month until February, 2002, and $2,000 per month to the Plaintiff for the Debtor's ex-wife's attorney fees deemed to be nondischargeable pursuant to Section 523(a)(5) for approximately 26 months. (Debtor's Ex. Nos. 1 and 2.) As such, by approximately May, 2002, the Debtor's monthly payments will decline by $3,500 per month insofar as he no longer will have to pay child support or non-dischargeable 523(a)(5) attorney fees and costs. The Debtor, however, will still have reasonable normal living expenses of approximately $2,000 per month, monthly alimony pay-. ments of $3,500 per month, and monthly

tax obligations of $1,638.00. Accordingly, by May, 2002, without considering any increase in income, the Debtor will have additional available disposable income of approximately $1,200 per month. The amount was calculated as follows:

| | |
|---|---|
| Monthly Income | $8,333.00 |
| Alimony | 3,500.00 |
| Income Taxes | 1,638.00 |
| Normal Living Expenses | 2,000.00 |
| | |
| Disposable Income Available May, 2002 | $1,195.00 |

The Court further specifically finds that the Debtor likely will receive regular increases in income as well as substantial annual bonuses that will significantly increase the amount of Debtor's annual income.

■■■ *Dischargeability Under Section 523(a)(15).* When an award granted in a dissolution is not in the nature of alimony, maintenance or support, Section 523(a)(15) controls. Section 523(a)(15) provides in pertinent part:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order or a court or record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property or the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ...; or

**2.** In light of the Eleventh Circuit Court of Appeals' decision in *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444 (11th Cir.1996), this Court would have found all of the attorney fees and costs awarded by the state court nondischargeable under Section 523(a)(5) because the determination necessarily involved an assessment of the former spouses' needs and ability to pay. By determining that the Debtor had the ability and should pay 100%

of the fees and costs, the state court must have concluded that the Debtor's former wife needed the payment for support reasons. However, the state court expressly found a certain portion of the fees and costs excluded from a Section 523(a) analysis. Therefore, this Court is limited to determining whether these remaining fees are dischargeable under Section 523(a)(15).

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

To except a debt from discharge under 523(a)(15), the creditor first must establish that the award is not in the nature of alimony, maintenance, or support. The burden of proof then shifts to the debtor, to show that he or she is entitled to discharge the non-support obligation pursuant to the exceptions under Section 523(a)(15) subsection (A) or (B). *Henrie v. Henrie (In re Henrie)*, 235 B.R. 113, 119 (Bankr.M.D.Fla.1999), *citing, Phillips v. Phillips (In re Phillips)*, 187 B.R. 363, 368 (Bankr.M.D.Fla.1995). Each party's burden of proof must be met by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). As such, after the creditor has established that he or she holds a claim not of the kind described in 523(a)(5), the burden shifts, so that "... under strict statutory construction, former husband must prove that he cannot pay the debt or that his nonpayment of the debt does not impose a detriment on former wife that outweighs the benefit of former husband's discharge." *Id.*

Here, the state court already has established that the Fees are not the kind described in Section 523(a)(5) and thus are not in the nature of alimony, maintenance, or support. The Plaintiff's burden of proof is met. The burden then shifts to the Debtor to prove he lacks the ability to pay the Fees. The Debtor made no attempt to introduce any evidence related to the balancing test set forth in Section 523(a)(15)(B). Therefore, the only remaining issue is whether the Debtor has the ability to pay the Fees.

■ *The Defendant has the Ability to Pay.* Although the Debtor currently lacks any excess income, the Debtor has the current ability to pay the Fees at a date

certain in the future. By May 2002, the Debtor will have substantial additional funds available, even assuming he gets no income increase, which the Court finds very likely. The inquiry of the bankruptcy court is not limited to the debtor's present ability to pay. *See In re Taylor*, 191 B.R. 760 (Bankr.N.D.Ill.1996) (examining the debtor's future ability to pay as well as his ability at the time of the bankruptcy petition filing), *aff'd*, 199 B.R. 37 (N.D.Ill. 1996). The Bankruptcy Court for the Northern District of Illinois in *Taylor* found a debt nondischargeable under Section 523(a)(15)(A) because of the debtor's future income potential.[3] *Id.* at 766–67.

■ The Debtor argues that his future income should not be included in a Section 523(a)(15) analysis. Section 523(a)(15) does not fix a precise time to determine a debtor's ability to pay. Typically, courts use the trial date as a starting point to evaluate income. *Henrie*, 235 B.R. at 120 (holding the court must look to the defendant's gross monthly income at or about the time of trial in a Section 523(a)(15) analysis); *Strayer v. Strayer (In re Strayer)*, 228 B.R. 211, 214 (Bankr. S.D.Ind.1996) (adopting the position that the date of trial is the appropriate starting point in examining the relative positions of the parties). However, using the trial date as a starting point does not preclude consideration of a debtor's future income potential in the foreseeable future. This is particularly true in a case such as this one where the debtor certainly will have substantially reduced expenses in the near future accompanied by at least a steady level of income, if not significant increases in his income. The Debtor will have an additional $3,500 per month available beginning in May, 2002, with at least the same level of income. He may lack the ability to pay the Fees today, but he has the current ability to pay them at a definite date in the future. The Debtor did not prove by a preponderance of the evi-

---

**3.** The *Taylor* court, however, did find the debt dischargeable under Section 523(a)(15)(B).

dence that he lacks the ability to pay the Fees.

*Conclusion.* The state court expressly found that the Fees were attributable to equitable distribution or property settlement. The Debtor has failed to prove that he lacks the ability to pay the Fees based on his anticipated future earnings and expenses. The Fees are not dischargeable under Section 523(a)(15). Judgment is entered in favor of the Plaintiff and against the Debtor. A separate order consistent with these Findings of Fact and Conclusions of Law shall be entered.