In re Michael Duane PHILLIPS, Debtor.

Theresa PHILLIPS, Plaintiff,

v.

Michael Duane PHILLIPS, Defendant.

Gordon P. JONES, Trustee, Plaintiff,

v.

Michael Duane PHILLIPS, Defendant.

Bankruptcy No. 94–4643–BKC–3P7.
Adv. No. 95–37, 95–39.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 16, 1995.

Jeffrey Becker, Jacksonville, FL, for Theresa Phillips.

Aaron R. Cohen, Jacksonville, FL, for Defendant.

Janet H. Thurston, Jacksonville, FL, for Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

These proceedings are before the Court upon the complaint objecting to discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A) filed by Trustee Gordon P. Jones (Trustee), and the complaint objecting to discharge and seeking exception from discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A), 523(a)(5), and 523(a)(15) filed by Theresa Phillips (Former wife). The Court consolidated the proceedings for trial on May 3, 1995, continued to May 16, 1995, and concluded on July 26, 1995. Upon the evidence

presented at trial, the Court enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Michael Duane Phillips (Former husband) and former wife were married on March 29, 1974, and lived as husband and wife until their separation in May, 1991. The parties were divorced on November 20, 1992. (Joint Ex. 9).

2. The Final Judgment of Dissolution of Marriage entered by the Circuit Court for St. Johns County, Florida ordered former husband to pay former wife $350 per month in child support and $1,500 per month in permanent periodic alimony. (Joint Ex. 9).

3. In addition to other items of property, the court also awarded former wife $120,000 in what it termed "lump sum alimony." The court included the lump sum alimony in the "Equitable Distribution" portion of the judgment. (Joint Ex. 9).

4. Former husband is employed by Phillips Brokerage, Inc., (Phillips Brokerage or Phillips Group) in which he owns a minority interest equal to forty-nine percent of the issued stock. Former husband's father, Charles Phillips, also owns forty-nine percent, and the remaining two percent is owned by other family members. (Joint Ex. 1).

5. The divorce court valued former husband's stock at $450,000. (Joint Ex. 9). At trial in this proceeding, former wife produced an expert witness who concluded that at the time of his petition, former husband's stock was worth $257,000. (Plaintiff Expert Ex. 127). In his schedules, former husband valued the stock at $25,490. (Joint Ex. 1). At trial, former husband produced an expert witness who testified that the value of former husband's stock on the date of his petition was $19,000. (Defendant Ex. 2). This expert originally valued the stock at $16,000. (Defendant Ex. 4).

6. Former husband filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 25, 1994. With his petition, former husband filed his statement of financial affairs and his schedules. Former husband signed these documents under penalty of perjury. (Joint Ex. 1).

7. On January 23, 1995, former wife filed a complaint objecting to former husband's discharge pursuant to 11 U.S.C. § 727(a)(4)(A), and seeking exception to discharge pursuant to 11 U.S.C. § 523(a)(5) and § 523(a)(15). On January 25, 1995, the Trustee filed a complaint objecting to former husband's discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and § 727(a)(2)(A).

8. Former wife alleged that former husband's discharge should be denied because he made a false oath in connection with his case by omitting information from his schedules and statement of financial of affairs. Alternatively, former wife alleged that should former husband receive a discharge, the $120,000 lump sum alimony awarded to former wife pursuant to the Final Judgment of Dissolution of Marriage should be excepted from former husband's discharge because the award is a nondischargeable support award. Finally, former wife alleged that if the Court found the award to be in the nature of a property settlement, the lump sum alimony would still be nondischargeable because former husband has the ability to pay the debt and the detriment to former wife outweighs the benefit of a discharge to former husband. The trustee also alleged that former husband's discharge should be denied because he knowingly and fraudulently made a false oath in completing his petition papers.

## CONCLUSIONS OF LAW

### I. Exception to Discharge Pursuant to 11 U.S.C. § 523(a)(5)

Former wife seeks to have the $120,000 lump sum alimony award excepted from former husband's discharge. To make this determination, the Court must first determine whether the debt is in the nature of support or part of a property settlement. This Court has held that "[t]he determination of whether an award is support or a property settlement is controlled by federal bankruptcy law, rather than state law." *In re Garrard*, 151 B.R. 598, 601 (Bankr.M.D.Fla. 1993). The Court has also held that "[t]he labels used in a settlement agreement are not controlling on the issue of dischargeability." *Id.* *See In re Cassata*, 119 B.R. 280

(Bankr.M.D.Fla.1990). The plaintiff bears the burden of proving that the debt is in the nature of support. *Id. See In re Long,* 794 F.2d. 928 (4th Cir.1986). If the debt is a true alimony award, it is nondischargeable pursuant to 11 U.S.C. § 523(a)(5), which states:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouses or child, in connection with or separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement....

11 U.S.C. § 523(a)(5).

This Court has previously considered six factors in evaluating the nature of a debt:

1. Whether the obligation under consideration is subject to contingencies, such as death or remarriage;

2. Whether the payment was fashioned in order to balance disparate incomes of the parties;

3. Whether the obligation is payable in installments or in lump sum;

4. Whether there are minor children involved in a marriage requiring support;

5. The respective physical health of the spouse and the level of education;

6. Whether, in fact, there was need for support at the time of the circumstances of the particular case;

*In re Bowsman,* 128 B.R. 485 (Bankr. M.D.Fla.1991).

■ The Final Judgment for Dissolution of Marriage awarded former wife $1,500 per month in permanent periodic alimony and $350 per month in child support. The child support award must terminate before the child's nineteenth birthday. The permanent periodic alimony award is terminable upon the death of former wife or former husband, or upon former wife's remarriage to or cohabitation with a member of the opposite sex. The Court finds that these awards are clearly in the nature of support because they were designed to provide support for the former husband's minor child and his former spouse and to balance the incomes of the parties.

■ The $120,000 lump sum alimony award, however, is unlike either of these awards. The divorce court ordered the lump sum award under the equitable distribution portion of the judgment, including it in the property settlement. Although the divorce court labeled the award "lump sum alimony," the award is characterized as a property award. The award is non-modifiable and is not contingent on death or remarriage. The award was also payable in one lump sum, a factor which is indicative of a property award. *In re Henry,* 5 B.R. 342 (Bankr. M.D.Fla.1980). At the time of their divorce, both parties were in good physical health. Former wife had a high school education, and former husband had a high school education and a two year L.U.T.C.F. degree. (Joint Ex. 9). In 1993, former wife filed a Motion for Enforcement of Final Judgment, seeking contempt sanctions against former husband for non payment of the lump sum award. The divorce court refused to hold defendant in contempt for non payment, stating that is was "without the ability to enforce the lump sum alimony which is in effect a property settlement." (Joint Ex. 12).

This Court finds that the lump sum alimony award is in the nature of a property settlement and thus falls outside the parameters of 11 U.S.C. § 523(a)(5).

## II. Exception From Discharge Pursuant to 11 U.S.C. § 523(a)(15)

Having concluded that the debt is in the nature of a property settlement, the Court must now determine whether the debt is dischargeable pursuant to 11 U.S.C. § 523(a)(15). The Bankruptcy Reform Act of 1994 created this section to except from discharge marital settlements which are not in the nature of alimony or support. Pub.L. No. 103–394. To date, few courts have dealt with § 523(a)(15) issues. Thus, this Court must examine the section in its infancy and apply it to the facts of this case.

Section 523(a)(15) reads:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ... or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor....

11 U.S.C. § 523(a)(15).

This Court has held that statutes should be construed narrowly to ensure consistency with legislative intent. *In re Webb*, 132 B.R. 199, 201 (Bankr.M.D.Fla.1991). The legislative history of § 523(a)(15) indicates that "[t]his sub-section will make [property awards] nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts." 140 Cong.Rec. H 10, 770 (Oct. 4 1994). In application, courts must now determine whether "paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents ... [or whether] a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation." *Id.* Congress cautions, however, that the debtor's discharge should only be denied if the detriment suffered by the nondebtor spouse substantially outweighs the debtor's need for a fresh start. *Id.*

Normally, the party objecting to the discharge bears the burden of proof by preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To discharge certain debts, however, such as student loans, the Code shifts the burden to the debtor to prove entitlement to discharge. *See* 11 U.S.C. § 523(a)(8). One Bankruptcy court has concluded that § 523(a)(15) requires the debtor to prove his entitlement to the exceptions. *In re Hill,* 184 B.R. 750, 754 (Bankr.N.D.Ill. 1995). The *Hill* court further concluded that "[t]he burden shift amplifies the policy that even though the debtor ordinarily is entitled to a discharge of debts in bankruptcy, the debtor must at times show he or she is deserving of the dischargeability of a particular debt." *Id.* Thus, under a strict statutory construction, former husband must prove that he cannot pay the debt or that his nonpayment of the debt does not impose a detriment on former wife that outweighs the benefit of former husband's discharge.

### A. Former Husband's Ability to Pay Debt

Pursuant to § 523(a)(15), former husband must first prove that he is unable to pay the $120,000 lump sum award. In *In Re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal.1995), the bankruptcy court determined that if the debtor had the ability to pay part of the debt, the court could declare a portion of the debt nondischargeable and require the debtor to pay the balance. 183 B.R. 883, 884 (Bankr. N.D.Cal.1995). In *Comisky,* the court determined that the debtor could, over time, afford to pay $10,000 of a $38,619 property settlement award. The court held that the remainder of the debt was dischargeable. *Id.* *Comisky* is distinguishable from the present case because the debtor in *Comisky* was awarded possession of the marital home and was required to refinance the home to pay his former spouse her share of the community. *Id.* at 884. In this case, the debt in question is a lump sum award which former wife received in addition to monthly support payments and possession of the marital home. Absent further inquiry into former husband's ability to pay the full amount, the Court finds it unnecessary to bifurcate the debt for purposes of dischargeability.

In *In re Hill,* however, the bankruptcy court suggested that for purposes of applying § 523(a)(15)(A), the defendant's ability to pay should be analyzed under the "dispos-

able income" test of § 1325(b)(2). 184 B.R. 750 (Bankr.N.D.Ill.1995). The disposable income test analyzes "whether the debtor's budgeted expenses are reasonably necessary." *In re Hill,* 184 B.R. 750 (Bankr. N.D.Ill.1995).[1] This Court will utilize this standard for purposes of applying § 523(a)(15)(A).

 Former wife argues that former husband has the ability to pay the debt because the value of his stock exceeds the combined value of his debts. Section 523(a)(15) specifically requires that the debt be expendable from the debtor's property or income. In this case, former husband's stock is property of the estate. 11 U.S.C. § 541. Thus, former husband's ability to pay must be based solely on the amount of his disposable income. Former husband's total monthly income is $1,644.17. (Joint Ex. 1). His total expenses total $2,812.81 (Joint Ex. 1). The fact that the income of former husband's non-debtor spouse is also applied toward these expenses is irrelevant to this discussion. Section 523 simply asks whether former husband can pay the debt from his income or assets. In this case, the former husband cannot afford to pay former wife and support his household. Thus, the Court finds that former husband has proved by a preponderance of the evidence that he is unable to pay the debt pursuant to 11 U.S.C. § 523(a)(15)(A).

### B. Benefit of Former Husband's Discharge

 Pursuant to 11 U.S.C. § 523(a)(15)(B), the Court must now determine whether the benefit of former husband's discharge outweighs any detriment former wife might suffer if the debt is not paid. The former husband has liabilities totalling $204,041.12. (Joint Ex. 1). As discussed above, former husband has minimal disposable income. Former husband filed for bankruptcy to obtain a financial "fresh start."

Former wife claims that she has suffered a detriment because she cannot afford to attend college, she was forced to sell the marital home and incurred a substantial tax burden, and she is forced to work twelve-hour days for commission-based compensation. By former wife's own testimony, however, she has a secure job with steady income, she lives in a large condominium, and drives a new sports car.

 Section 523(a)(15)(B) requires this Court to exercise its pure equitable powers. To apply this section as Congress intended, this Court must in essence evaluate the lifestyles of the parties and measure the benefit of former husband's discharge against the degree of harm suffered by former wife. The legislative history of this section essentially requires this Court to make a value judgment in deciding which party suffers the most. This Court is not shy to fulfill its role in deciding what is "fair." In this case, the Court finds that the benefit of a discharge to the former husband far outweighs any detriment suffered by former wife. Thus, the Court finds that if former husband is entitled to a discharge, the debt owed to former wife cannot be excepted from that discharge pursuant to 11 U.S.C. § 523(a)(15)(B).

### III. Objection to Discharge Pursuant to 11 U.S.C. § 727

The Court must now decide whether the former husband's discharge should be denied pursuant to 11 U.S.C. § 727. Although the Trustee's complaint alleged that former husband's discharge should be denied pursuant to both 11 U.S.C. § 727(a)(2)(A) and § 727(a)(4)(A), the Trustee did not produce evidence relative to § 727(a)(2)(A). Thus, the Court will evaluate both the Trustee's and the former wife's objection to discharge pursuant to 11 U.S.C. § 727(a)(4)(A). Section 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently in or in connection with the case—

---

**1.** Section 1325 defines disposable income as income "not reasonably necessary to be expended—(A) for the maintenance or support of the debtor or a dependent of the debtor...." 11 U.S.C. § 1325.

(A) made a false oath or account....

11 U.S.C. § 727(a)(4)(A).

██ To justify the denial of a discharge under § 727(a)(4)(A), the objecting party must prove by a preponderance of the evidence that the debtor knowingly made a false oath that was both fraudulent and material. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) and *Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir.1991). *See Chalik v. Moorefield,* 748 F.2d 616 (11th Cir.1984). If the objecting party overcomes this burden, the burden of persuasion shifts to the debtor. *In re Boston,* 141 B.R. 249, 251 (Bankr.M.D.Fla.1992). *See In re Vincent,* 159 B.R. 595, 597 (Bankr.M.D.Fla.1993) (citing *In re Goblick,* 93 B.R. 771 (Bankr. M.D.Fla.1988)).

██ An oath or omission is material if it relates to the debtor's business transactions or aids in the discovery of his assets. *In re Urban,* 130 B.R. 340, 344 (Bankr. M.D.Fla.1991) and *In re Gonzalez,* 92 B.R. 960 (Bankr.S.D.Fla.1988). Although a single omission is generally insufficient to support an objection to discharge, a series of omissions may create a pattern which demonstrates the debtor's reckless disregard for the truth. *In re Clawson,* 119 B.R. 851 (Bankr.M.D.Fla.1990). From this pattern of behavior, fraudulent intent may be presumed. *In re Sausser,* 159 B.R. 352 (Bankr. M.D.Fla.1993). *See In re Gipe,* 157 B.R. 171 (Bankr.M.D.Fla.1993).

### A. Omissions from Schedules

██ In this case, plaintiffs allege that former husband omitted information relating to his business transactions and his assets from his schedules. First, plaintiffs allege that in Schedule B, former husband purposefully omitted his interest in two insurance policies; that he purposefully undervalued his interest in the Phillips Group stock; that he falsely stated that he did not own any art objects or music collections; that he falsely stated that he owned no clothing or jewelry; and, that he omitted ownership of carpet cleaning equipment, camping equipment, stereo equipment, kitchen appliances, and miscellaneous household goods. (Joint Ex. 1).

At the § 341 meeting held in this case on December 1, 1994, former husband admitted his interest in two insurance policies and stated that they should have been disclosed on his schedules. (Plaintiff Ex. 13 at 14–15). Former husband also admitted that he owned clothing, jewelry, and works of art that should have been disclosed. (Plaintiff Ex. 13 at 13). Although former husband alleged that some of the items omitted from questions regarding sporting equipment and household goods were given to other individuals as gifts, he admitted that the camping equipment, a vacuum cleaner, a compact disc player, a carpet cleaner, and a canoe were still in his possession. (Plaintiff Ex. 13 at 15–16). Those items should have been disclosed on former husband's schedules.

Both sides presented substantial testimony regarding the appropriate valuation method for determining the value of former husband's stock interest in the Phillips Group. In his schedules, former husband valued his stock at $25,490. Former husband contended that he listed the value of his shares at "book value" because the by-laws of the Phillips Group stipulated that book value was the correct valuation method. (Plaintiff Ex. 13 at 6 and Joint Ex. 2).

Plaintiffs, however, argue that the book value method is improper in this case because former husband's valuation of his stock was rejected by the divorce court. The divorce court utilized several valuation techniques and valued the stock at $450,000. (Joint Ex. 9). Plaintiffs employed the same accounting expert to value the stock as of the date of the petition filed in this case. Plaintiffs' witness combined the same valuation methods used in the divorce judgment and concluded that as of the date of petition, former husband's 49.09 percent stock interest in Phillips Brokerage, Inc. was valued at $257,000. (Plaintiff Expert Ex. 127).

██ Plaintiffs argue that former husband knew of the divorce court's valuation yet used the book value to purposefully undervalue his stock interest on his schedules in attempt to defraud his creditors. Plaintiffs also argue that this Court is collaterally estopped from determining which valuation

method is correct because the issue here is identical to the valuation issue facing the divorce court, the issue was litigated to final judgment in the divorce court, and the determination of the valuation issue was critical and necessary to the final judgment for dissolution of marriage. *See In re Halpern,* 810 F.2d 1061 (11th Cir.1987).

The Court agrees that it is estopped from choosing a new valuation method. Thus, the value of former husband's stock should be determined using the criteria established by the divorce court. Under that method, the stock was undervalued.

Plaintiffs next allege that the former husband failed to disclose the lease of his residence on Schedule G (Joint Ex. 1). When questioned about the property, former husband admitted that he was leasing the property and that he thought he had disclosed it on his schedules. (Plaintiff Ex. 13 at 12). Plaintiffs also allege that former husband did not disclose a $10,000 debt to former wife for unpaid periodic alimony and misstated the amounts of debts to Charles Phillips and Phillips Brokerage, Inc. Former husband stated that he did not know why the debt to former wife was not disclosed on his schedules. (Plaintiff Ex. 13 at 12).

In interrogatories signed by former husband in connection with his divorce in October, 1994, former husband stated that his debt to Charles Phillips totalled $10,560.40 (Plaintiff Ex. 4). In Schedule D, however, which was filed shortly after former husband answered his divorce interrogatories, former husband listed the debt to Charles Phillips as $28,334. (Joint Ex. 1). Former husband's only explanation for the $17,773.60 difference is that the debt listed on his schedule includes loans not evidenced by promissory notes. When asked why such a difference appeared on the schedules, the former husband responded. "I couldn't tell you." (Plaintiff Ex. 13 at 9). Similarly, former husband's answers to his divorce interrogatories state that he owes $7,500 to the Phillips Group while his schedules list that debt at $17,392.45. (Joint Ex. 1 and Plaintiff Ex. 4). Again, former husband explained the difference by stating that the scheduled amount includes loans made without a promissory note. (Plaintiff Ex. 13 at 9). This explanation is inadequate to remove suspicion regarding the correct amount of the debts to Charles Phillips and Phillips Brokerage, Inc.

### B. Omissions from Statement of Financial Affairs

Plaintiffs also allege that former husband omitted from or provided incorrect information on his Statement of Financial Affairs. First, plaintiffs alleged that former husband failed to disclose income he received other than from his place of employment. (Joint Ex. 1). Plaintiffs produced evidence indicating that former husband performed part-time construction work for which he received monetary compensation. Former husband did not list this income on his statement. (Plaintiff Ex. 2).

Plaintiffs also contend that former husband failed to disclose that within one year of his petition, he was involved in a state divorce action, and his wages had been garnished for non-payment of a child support arrearage. Plaintiff's evidence indicates that the Final Judgment of Dissolution of Marriage was entered on November 20, 1992. (Joint Ex. 9). On April 16, 1993, the Circuit Court for St. Johns County, Florida entered an order to enforce that final judgment and directed the clerk of court to garnish former husband's wages for payment of the child support arrearage totalling $1,855 (Joint Ex. 12). Former husband filed his petition on October 25, 1994. Both the divorce action and the garnishment order occurred within one year the petition date.

Plaintiffs next argue that former husband failed to disclose that he possessed property owned by another. (Joint Ex. 1). Former husband admitted that he had exclusive control and possession of a vehicle owned by Phillips Brokerage, Inc. (Plaintiff Ex. 13 at 12). Although former husband made monthly payments for the vehicle and disclosed those payments in his schedules, he omitted the company's ownership of the vehicle from his statement of financial affairs. (Joint Ex. 1).

In his statement of financial affairs, former husband stated that he had not closed any

financial accounts within one year immediately preceding the commencement of his case. In his answers to interrogatories regarding his divorce, however, former husband stated that he closed a joint account at Ponte Vedra National Bank in 1994. This action occurred within the year prior to his bankruptcy filing and should have been disclosed. (Plaintiff Ex. 4).

Finally, plaintiffs allege that former husband failed to disclose that he was an officer, director, or managing executive of a corporation within the two years preceding his petition. (Joint Ex. 1). Plaintiffs contend that former husband was an officer in both Phillips Group, Inc. and a corporation known as Corporate Plans of Florida, Inc. In his answers to interrogatories propounded in his divorce action, former husband stated that he was Vice President of the Phillips Group. (Plaintiff Ex. 4). Plaintiffs also produced a corporate newsletter of the Phillips Group dated January/February 1995 which lists former husband as Vice President of the corporation.

Former husband argues that Corporate Plans of Florida was dissolved more than two years prior to his bankruptcy filing. Records maintained by the Secretary of State, however, indicate that as late as 1994, Corporate Plans of Florida, Inc. was a viable corporation under the laws of Florida and former husband was listed as a Vice President of the corporation. (Plaintiff Ex. 12). Former husband's officership in both the Phillips Group and Corporate Plans of Florida, Inc., should have been disclosed.

After the § 341 meeting, former husband did amend his Schedule B to disclose his ownership and possession of a vacuum cleaner, a rug cleaner, a portable cassette player, miscellaneous kitchen utensils, miscellaneous clothing, a watch, two rings, a canoe, and miscellaneous hand tools and bath supplies. (Defendant Ex. 2). Former husband, however, did not amend other portions of his schedules or his statement of financial affairs. Other courts in this district have held that "[w]hile it is true that by virtue of F.R.B.R. 1009 the [former husband] has an absolute right to amend his Schedules so long as the case is open, the amendment would not cleanse the original Statements if they are found to be tainted and fraudulent." *In re Gipe,* 157 B.R. 171, 178 (Bankr.M.D.Fla. 1993).

■ This Court has held that the administration of a debtor's estate is impaired if the debtor does not accurately and truthfully represent his affairs to creditors and to the Court. *In re Klein,* 114 B.R. 778 (Bankr. M.D.Fla.1990). In this case, the former husband's amendment to Schedule B is insufficient to remove the taint of fraudulent intent. Despite his amendment to Schedule B, former husband failed to correct numerous other significant and material omissions. Combined, these omissions have prevented the identification, marshalling, and liquidation of assets of the estate.

Upon the evidence presented, the Court finds that former husband made a false oath through a series of material omissions from his schedules and his statement of financial affairs. Although any one of these omissions or incorrect statements in isolation would unlikely provide a basis for the denial of his discharge, the Court finds that the former husband's carelessness in completing his petition papers and his vague responses to questions regarding those errors indicates a reckless disregard for the truth. From this conduct, the Court infers fraudulent intent and finds that former husband knowingly and fraudulently made a false oath in completing his petition papers. Accordingly, the Court must deny the discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

The Court will enter a separate order consistent with these findings of fact and conclusions of law.

## JUDGMENT

These proceedings are before the Court upon the complaint objecting to discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A) filed by Trustee Gordon P. Jones, and the complaint objecting to discharge and seeking exception from discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A), 523(a)(5), and 523(a)(15) filed by Theresa Phillips. Upon findings of fact and conclusions of law separately entered, it is

ORDERED:

1. On the complaint seeking exception to discharge pursuant to 11 U.S.C. §§ 523(a)(5) and 523(a)(15), judgment is entered in favor of the defendant, Michael Duane Phillips, and against the plaintiff, Theresa Phillips.

2. On the complaint objecting to discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A), judgment is entered in favor of the plaintiffs, Trustee Gordon P. Jones and Theresa Phillips, and against the defendant, Michael Duane Phillips.

3. Defendant's discharge is denied pursuant to 11 U.S.C. § 727(a)(4)(A).