In re Chris R. HENRIE, Debtor.

Patricia F. Burgess f/k/a/ Patricia Henrie, Plaintiff,

v.

Chris R. Henrie, Defendant.

Bankruptcy No. 98–0492–3P7.
Adversary No. 98–93.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 22, 1999.

Denise E. Barnett, Jax, FL, for plaintiff.

Robert Altman, Palatka, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon a complaint filed by Patricia F. Burgess f/k/a Patricia Henrie ("Plaintiff") seeking to except a debt from the discharge of Chris R. Henrie ("Defendant") pursuant to 11 U.S.C. §§ 523(a)(5) and (a)(15). (Adv.Doc. 1.) Upon the evidence presented at trial on November 10, 1998, and January 21, 1999, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Defendant and Plaintiff were married on July 11, 1981.

2. On June 19, 1993, the parties separated.

3. On May 3, 1995, the parties entered into a separation and property settlement agreement ("Settlement Agreement"). (Pl.['s] Ex. 1.)

4. Settlement Agreement provides for the division of the parties' personal and real property.[1]

5. On May 25, 1995, the parties received a Judgment of Absolute Divorce that incorporated Settlement Agreement. (Pl.['s] Ex. 1.)

6. The parties had no children during the course of their marriage.

7. Prior to their divorce, Defendant and Plaintiff owned two (2) homes, one in Fort Washington, Maryland and the other in Newport News, Virginia.

8. Settlement Agreement provided that both properties would be sold and the proceeds would be divided and used to pay off certain credit card debts. (Id. at p. 7.)

9. Pursuant to Settlement Agreement, Defendant was to maintain the mortgage payments on the house in Virginia and Plaintiff was to maintain the mortgage payments on the house in Maryland until the homes were sold.

10. Settlement Agreement further provided that if Defendant failed to make the monthly mortgage payments on the house in Virginia and Plaintiff made the payments because of Defendant's default, Plaintiff would be reimbursed from Defendant's share of the proceeds of the sale. (Id. at p. 10.)

11. Due to Defendant's unemployment and failure to rent the Virginia home, Defendant could not keep the mortgage payments current as required by Settlement Agreement, and thus, the home was sold at foreclosure.

12. As a result, the state court issued an order of contempt providing for damages as a result of Defendant's default of Settlement Agreement.[2] (Pl.['s] Ex. 2.)

13. The state court contempt order awarded Plaintiff a monetary judgment of approximately $55,159.18.[3]

14. Defendant has made no attempt to satisfy his obligations under the contempt order.

15. Defendant remarried and is currently living with his new wife and stepdaughter in a doublewide mobile home.

16. Defendant retired a Master Chief Petty Officer from the United States Navy in 1994. During his tenure in the military, Defendant completed various college courses and computer classes. Defendant's primary military occupation was missile technician. (Pl.['s] Ex. 5.)

17. Currently, Defendant is employed at Wal-mart as an assistant manager and earns a net income of approximately $237.69 per week or $1,029.98 per month. (Def.['s] Ex. 15.) Defendant's Schedule I indicates that he receives an additional amount of $1,063.19 per month as a mili-

---

1. Settlement Agreement also provides for Plaintiff to receive a percentage of Defendant's military pension. On February 19, 1997, the state court found that the military retirement benefits due Plaintiff from June 1995, through November 1995, were not paid and thus, entered a money judgment against Defendant in the amount of $3,216.77. At trial the parties stipulated to the nondischargeability of this award by the state court.

2. Defendant also violated paragraph 19 of Settlement Agreement by executing an assignment of proceeds of his interest in the Fort Washington, Maryland property for the benefit a law firm for overdue legal bills. The law firm was aware of Settlement Agreement at the time the assignment was made.

3. See supra note 1. The $3,216.77 award that was stipulated by the parties to be nondischargeable is included in the total contempt order amount, thus, the remainder of $51,942.41 represents the portion of the award subject to the nondischargeability claim of this adversary proceeding.

tary retirement benefit. (Def.['s] Ex. 15.) However, Defendant testified that insurance is now deducted from this amount, reducing his monthly net to $1,044.67. Thus, Defendant's total net monthly income is $2,074.65.

18. Defendant's wife earns approximately $10,000.00 annually.[4]

19. Defendant's Schedule J indicates monthly expenses of $1,915.00. (Def.['s] Ex. 16.) However, Defendant testified that he divided the total family expenses in half when he computed his Schedule J. Also, Defendant's testimony indicates that $457.00 of this monthly expense is his wife's responsibility for payment for her car.

20. Plaintiff is college educated and has an annual salary of approximately $50,000.00. Plaintiff also receives a portion of Defendant's military pension in the amount of $6,303.76 annually, and income from an annuity left by her late mother in the amount of $3,741.24. Also, as noted in the estate records, Plaintiff received $3,792.95 in November, 1997, as personal representative of her mother's estate. (Def.['s] Ex. 9.) Further, Plaintiff stands to inherit half (½) of her mother's estate which is valued at approximately $200,000.00. (Def.['s] Exs. 13, 14.)

21. Plaintiff claims a total monthly income of $4,750.19 and total monthly expenses of $5,542.00. (Pl.['s] Ex. 8.)

22. Plaintiff lives in a home in Virginia valued at approximately $185,000.00. Plaintiff has about $65,000.00 equity in the home.

23. Plaintiff drives a Toyota 4 Runner that was purchased recently for $28,000.00.

24. On January 22, 1998, Defendant filed a petition for relief with this Court under Chapter 7 of the Bankruptcy Code. (Doc. 1.)

25. On May 4, 1998, Plaintiff filed a Complaint to Determine Dischargeability of Debt. (Adv.Doc. 1.)

### CONCLUSIONS OF LAW

Plaintiff seeks to have this Court except the $51,942.41 debt[5] from Defendant's discharge pursuant to 11 U.S.C. §§ 523(a)(5) and (a)(15). Plaintiff initially contends that the debt is in the nature of alimony or support, and therefore, is excepted from Defendant's discharge pursuant to § 523(a)(5). Alternatively, Plaintiff argues that even if the debt is the result of a property settlement, Defendant has the ability to pay the debt, and the detrimental consequences to Plaintiff far outweigh any benefit to Defendant of discharging the debt. (Adv.Doc. 15.) Defendant counters by asserting that he does not have the ability to pay the debt and the value of his discharge far outweighs any detriment to Plaintiff.[6]

### I. Exception to Discharge Pursuant to 11 U.S.C. § 523(a)(5)

Generally, the burden is on the plaintiff to demonstrate by a preponderance of the evidence that the debt is within one of the specifically enumerated exceptions under § 523(a). *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659–660, 112 L.Ed.2d 755 (1991); FED.R.BANKR.P. 4005 (1999). When determining whether a debt may be excepted from discharge pursuant to § 523(a)(5), the Court must first ascertain whether the debt is in the nature of support or part of a property settlement. *See Phillips v. Phillips (In re Phillips)*, 187 B.R. 363, 366 (Bankr.M.D.Fla. 1995). If the debt is an alimony award, it is nondischargeable pursuant to 11 U.S.C. § 523(a)(5). *See* 11 U.S.C. § 523(a)(5) (1999) (providing debt to former spouse for

---

**4.** Defendant testified at trial on January 21, 1999, that his wife was laid off the previous week, but was presently looking for new employment.

**5.** *See supra* note 2.

**6.** Counsel for Defendant did not find it necessary to counter Plaintiff's argument under § 523(a)(5).

"alimony to, maintenance for, or support of such spouse ..." is not dischargeable). Therefore, plaintiff bears the burden of proving that the debt is in the nature of support. *See Phillips,* 187 B.R. at 367 (citing *In re Long,* 794 F.2d 928 (4th Cir. 1986)).

■■■ To determine whether an award is in the nature of support or a property settlement, the Court looks to federal bankruptcy law, not state law. *See Phillips,* 187 B.R. at 366 (citing *In re Garrard,* 151 B.R. 598, 601 (Bankr.M.D.Fla.1993)). This Court has traditionally relied on six factors when evaluating the nature of a debt:

1. Whether the obligation under consideration is subject to contingencies, such as death or remarriage.

2. Whether the payment was fashioned in order to balance disparate incomes of the parties.

3. Whether the obligation is payable in installments or in lump sum.

4. Whether there are minor children involved in a marriage requiring support.

5. The respective physical health of the spouse and the level of education.

6. Whether, in fact, there was need for support at the time of the circumstances of the particular case.

*In re Bowsman,* 128 B.R. 485, 487 (Bankr. M.D.Fla.1991) (citations omitted). "The labels used in a settlement agreement are not controlling on the issue of dischargeability." *Garrard,* 151 B.R. at 601. Rather, the Court must make an independent evaluation as to whether an obligation arising from a divorce decree is in the nature of alimony, and thus, is nondischargeable. *In re Harrell,* 754 F.2d 902 (11th Cir. 1985).

### 1. Contingencies on Payment

Defendant's obligation was not contingent on death or remarriage or any other contingencies. This factor supports a finding that the award was a property settlement.

### 2. Income of the Parties

At the time of the divorce and award, Defendant was unemployed and only receiving income from his military pension. Plaintiff maintained an annual salary of approximately $50,000.00. Although the income of the parties was disparate, the equal division of the property does not seem to have been fashioned in order to balance this apparent disparity. This factor supports the conclusion that the award is a property settlement.

### 3. Pattern of Payment of Debt

The obligation was not payable in installments. Rather, the Settlement Agreement provided that Plaintiff and Defendant would be assigned a house that each would be responsible for until it was sold. The parties were to divide the profits realized from the sales after paying off certain credit card debt. *See In re Sheffield,* 212 B.R. 1019, 1021 (Bankr.M.D.Fla.1997) (noting alimony typically awarded to only one party). The present division resembles a lump sum payment, and is indicative of a property settlement. *See In re Henry,* 5 B.R. 342 (Bankr.M.D.Fla.1980).

### 4. Need for Child Support

The parties had no children during the course of the marriage. This supports a finding that the settlement was for a division of property.

### 5. Health and Education of the Parties

■■ Defendant is in good physical health. Defendant is a high school graduate and received various skill training while in the military. At trial Plaintiff indicated that she had health problems, including diabetes. However, these problems do not impair her ability to work. Plaintiff is college educated. Normally, when one spouse is more educated than the other, and the less educated spouse receives the award, this supports the con-

clusion that the award is for support. *Costello v. Prater (In re Prater)*, 231 B.R. 819, 822 (Bankr.M.D.Fla.1999). Here, however, Plaintiff is more educated than Defendant and is seeking payment of a state court contempt order that was issued as a result of Defendant's financial inability to comply with the Settlement Agreement.

### 6. Need for Spousal Support

At the time of the Divorce, Defendant was unemployed and only receiving income from his military pension. Plaintiff was employed and earning substantially more than Defendant. Clearly, Plaintiff did not need spousal support from Defendant.

■ The Court finds it necessary to note that while settlement agreements are not controlling, they will be given some weight when the Court makes its independent analysis on the issue of dischargeability. In the present case, paragraph 22 of Settlement Agreement specifically states that "[t]he parties hereby mutually waive any and all right or claim that he or she may have to support and/or alimony from the other party." (Pl.['s] Ex. 1.) This language supports the conclusion that the Settlement Agreement was intended to be a property settlement.

An analysis of the above factors points inescapably to the conclusion that the award is in the nature of a property settlement, and thus, falls outside the parameters of 11 U.S.C. § 523(a)(5).

### II. Exception to Discharge Pursuant to 11 U.S.C. § 523(a)(15)

Having determined that the debt is in the nature of a property settlement, the Court must now determine whether the debt is dischargeable pursuant to § 523(a)(15). Section 523(a)(15) provides that:

 (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt

 (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order or a court or record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property or the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor . . .

11 U.S.C. § 523(a)(15) (1999).

■ As this Court has previously noted, "[t]his subsection will make [property awards] nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts." *Phillips*, 187 B.R. at 368 (quoting 140 Cong.Rec. H10, 770 (Oct. 4, 1994)). However, exceptions to discharge are to be construed strictly in favor of the debtor, and therefore, discharge should only be denied if the detriment to a nondebtor spouse substantially outweighs the debtor's need for a fresh start. *See Christison v. Christison (In re Christison)*, 201 B.R. 298, 307 (Bankr.M.D.Fla. 1996) (citing *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986)); *see also Phillips*, 187 B.R. at 368. The Defendant bears the burden to show by a preponderance of the evidence that he is entitled to a discharge pursuant to the exceptions under § 523(a)(15)(A) or (B). *See Phillips*, 187 B.R. at 368; *see also Busch v. Busch (In re Busch)*, 226 B.R. 710, 713 (Bankr.M.D.Fla.1998) (citations omitted). Therefore, Defendant must

first show that he is unable to pay the $51,942.41 property award.

### 1. Defendant's Ability to Pay

 In order for the Court to determine whether Defendant has the ability to pay the debt he owes to Plaintiff, it must evaluate debtor's financial condition as it existed at or about the time of trial. *See Tersen v. Tersen (In re Tersen)*, 234 B.R. 189, 192–93 (Bankr.M.D.Fla.1999) (citations omitted). This Court has consistently applied the disposable income test embodied in 11 U.S.C. § 1325(b)(2) when evaluating a debtor's ability to pay in § 523(a)(15)(A) proceedings. *Id.; Phillips*, 187 B.R. at 368. Section 1325 defines disposable income as "income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor...." 11 U.S.C. § 1325 (1999).

### 2. Defendant's Income

Preliminarily, the Court looks to Defendant's gross monthly income at or about the time of trial. Based upon the Defendant's schedules and testimony at trial, the Court determined in its above Findings of Fact that Defendant has a gross monthly income of $2,074.65.

### 3. Defendant's Expenses

Plaintiff argues that a portion of Defendant's expenses are not reasonably necessary for his maintenance and support. Defendant admits that the $457.00 listed on his Schedule J is a payment that his wife is responsible for, and thus, has subtracted that amount from his list of expenses. However, Defendant testified that, when calculating his Schedule J, he divided all his monthly expenses in half, allocating the other half as his wife's responsibility even though she earns only approximately one-third of the total family

income. Therefore, Defendant contends that his actual monthly expenses are $2,916.00,[7] and only with the addition of the income of his current wife is it possible for the family to meet its monthly expenses. Upon review Defendant's Schedule J and consideration of his testimony at trial, the Court finds the following monthly expenses to be reasonably necessary:

| | |
|---|---|
| Rent or home mortgage: | $680.00 |
| Electricity/heating: | $165.00 |
| Water/sewer: | $ 34.00 |
| Telephone: | $ 95.00 |
| Cable: | $ 0 |
| Home maintenance: | $ 75.00 |
| Food: | $350.00 |
| Clothing: | $100.00 |
| Medical/dental: | $150.00 |
| Transportation: | $120.00 |
| Recreation: | $100.00 |
| Charity: | $ 50.00 |
| Home insurance: | $100.00 |
| Auto insurance: | $100.00 |
| Total expenses: | $2,119.00 |

 Plaintiff argues that the income of Defendant's new wife should be considered when determining whether Defendant has the ability to pay the debt he owes her. However, the plain language of § 523(a)(15)(A) restricts the determination of the ability to pay solely to the income of the debtor. *See* 11 U.S.C. § 523(a)(15)(A) (1999); *see also Carter v. Carter (In re Carter)*, 189 B.R. 521, 522 (Bankr.M.D.Fla. 1995) (noting debtor's ability to pay not enhanced by inquiring into financial condition of debtor's current spouse); *Phillips*, 187 B.R. at 368 (same). Plaintiff also asserts that Defendant has purposely underemployed himself in order to avoid paying her. While Defendant's military experience may qualify him for employment as a mechanic or repairer, no evidence was offered to show that this work is available or pays more than Defendant's current job. Further, no evidence was introduced to establish that Defendant has underemployed himself purposely in order to avoid paying Plaintiff. Moreover, the fact re-

---

7. Defendant calculates this figure by subtracting his wife's car payment of $457.00 from the $1,915.00 total expense sum listed in his Schedule J, and multiplying the difference by two.

mains that Defendant only has a high school diploma.

After subtracting Defendant's monthly expenses from his monthly income, it is clear that Defendant cannot afford to pay Plaintiff and support his household. Based on the foregoing, the Court finds that Defendant has proved by a preponderance of the evidence that he is unable to pay the debt pursuant to 11 U.S.C. § 523(a)(15)(A).

■■■■ While it is unnecessary to address § 523(a)(15)(B) because the Defendant has met his burden pursuant to § 523(a)(15)(A), the Court finds that, in viewing the circumstances of this case, the benefit of discharging this debt outweighs the detriment caused to Plaintiff. Section 523(a)(15)(B) sets forth a balancing test that requires Defendant to show that the benefit of discharging his debt outweighs the detrimental consequences of discharge to Plaintiff. 11 U.S.C. § 523(a)(15)(B) (1999). "Section 523(a)(15)(B) requires the Court to exercise its pure equitable powers" and "make a value judgment in deciding which party suffers the most." *Phillips*, 187 B.R. at 369. Plaintiff claims she is harmed because she is now responsible for joint credit card debt incurred during the marriage, and has otherwise suffered losses due to Defendant's inability to comply with Settlement Agreement.[8] However, Plaintiff has a secure job making approximately $50,000.00 annually, lives in a large home and drives a $28,000.00 sports utility vehicle. Plaintiff's salary is also supplemented by a monthly annuity payment and a portion of Defendant's military retirement. As discussed above, Defendant lives very modestly and has no disposable income. Adding the burden of payment of this debt would cause Defendant to fall deeper into financial turmoil and upset the Bankruptcy Code's policy of granting the debtor a fresh start.

8. Plaintiff claims a monthly income of $4,750.19 and total expenses of $5,542.00.

*CONCLUSION*

When viewing the circumstances in total, the Court concludes that the debt in question arose as a result of a property settlement, and thus, falls outside the parameters of § 523(a)(5). Further, Defendant has met his burden in establishing that he does not have the ability to pay the debt, and that the benefit of discharging the debt outweighs any detrimental consequences to Plaintiff. Thus, Plaintiff's complaint seeking exception from Defendant's discharge pursuant to §§ 523(a)(5) and (15) is not well taken and is denied. The Court will enter a separate judgment consistent with the foregoing.

However, Plaintiff admits she pays well over the minimum required on all her credit cards.