**In re Edgar S. VITEK, Debtor.**

**Sandra J. Spiezio, Plaintiff,**

v.

**Edgar S. Vitek, Defendant.**

**Bankruptcy No. 00–56112.
Adversary No. 00–0488.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Dec. 26, 2001.

Lee C. Mittman, Mark A. Ditullio, Columbus, OH, for Plaintiff.

Phillip D. Cameron, Dublin, OH, for Defendant.

William B. Logan, Jr., Columbus, OH, Chapter 7 Trustee.

Alexander G. Barkan, Columbus, OH, Assistant United States Trustee.

### MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This Memorandum Opinion and Order serves as the Court's findings of fact and conclusions of law. The subject of the instant litigation is the Complaint Objecting to the Discharge and Dischargeability of Debt filed by Sandra J. Spiezio ("Plaintiff") and the Answer of Edgar S. Vitek ("Defendant"). The Plaintiff alleges that the Defendant failed to maintain, concealed and falsified financial records and has failed to satisfactorily explain a diminution in assets. As a result, the Plaintiff asserts that the Defendant is not entitled to receive a discharge pursuant to section 727(a)(3) and (5) of the United States Bankruptcy Code ("Code"). The Plaintiff also challenges the dischargeability of payment obligations arising from a property settlement agreement, pursuant to section 523(a)(15)(A) and (B) of the Code. The Plaintiff claims the Defendant can pay the property settlement obligations, or in the alternative, the harm caused to the Plaintiff by their discharge outweighs any benefit to the Defendant.

Based upon the evidence, the statements of counsel and review of the post trial memoranda, the Court has concluded that the Plaintiff has not sustained her burden of proof on the objections to discharge. The Court has concluded, on the other hand, that the Defendant has not sustained his burden of proof to establish the dischargeability of the property settlement agreement and a related promissory note obligation. While all other scheduled debts are discharged, the Defendant remains liable for payment of the balance due on the property settlement agreement and a related promissory note. A brief summary of the facts will illustrate the bases for the Court's decision.

On June 6, 1968, the Plaintiff and Defendant were married. The Defendant had been a Catholic priest, and after the marriage became an insurance sales agent. The Plaintiff had been widowed, with two children to raise. During the marriage, the Plaintiff was not employed outside the home, and the Defendant supported her and the children. The Plaintiff and the Defendant separated in 1987, and an Agreed Judgment Entry and Decree of Divorce ended their marriage on July 28, 1992 ("Agreed Entry"). The Defendant agreed to pay the Plaintiff $144,000.00 in monthly installments of $750.00 for the first ten years, and $600.00 per month thereafter. In addition, the Plaintiff was awarded the marital home, and the Defendant was awarded various investment properties and an unimproved lot in Palm Coast, Florida. The Agreed Entry required the Defendant to pay the second mortgage on the marital home.

After the divorce, the marital home was sold. To close the transaction, a portion of the proceeds ($12,440.55) was paid to satis-

fy the Defendant's second mortgage obligation. There is conflicting testimony regarding repairs on the marital home made or paid for by the Defendant. In any event, a promissory note was executed in October 1996 that required the Defendant to repay the Plaintiff at the rate of $250.00 per month.[1] Significant payments were made by the defendant on the property settlement agreement and the related promissory note in the approximate amount of $1,000.00 per month. In September or October 1999, the Defendant telephoned the Plaintiff to inform her that he could no longer make the payments. According to the Plaintiff's testimony, the Debtor told her that if she pursued collection, he would file bankruptcy. The Plaintiff testified that the cessation of the payments caused her to change her plans to purchase another home. Instead, she placed her furniture in storage, and moved in with elderly parents.

The Defendant commenced the instant chapter 7 proceeding on July 11, 2000. The Plaintiff is scheduled as an unsecured creditor with a balance due of $77,000.00, based upon the property settlement agreement. Claims to all unsecured creditors are scheduled in the total amount of $218,628.84. Besides the obligation to the Plaintiff, the unsecured claims include fourteen credit card companies with balances ranging from approximately $1,500.00 to $20,000.00. The Defendant testified that a significant portion of the credit card debt was incurred to make the property settlement agreement payments, until he could not obtain any further credit. Scheduled real property includes, 5292 and 5330 Sinclair Road, Columbus, Ohio 43229, and Lot 20, Zennia Court, Palm Coast, Florida. The Debtor resides in and conducts his insurance business in one-half of the structure on 5330 Sinclair Road. The Defendant actually lives in one room furnished only with a refrigerator, microwave, television, a bed, and cupboards. A lock shop business owned by the Defendant used the other half of the 5330 Sinclair Road property, but was closed during the first part of 2001. The 5292 Sinclair Road property is currently leased to the Defendants's step-grandson at the rate of $522.00 per month, under the Section 8 program.

The scheduled values of the 5292 and 5330 Sinclair Road properties are respectively listed as $63,600.00 and $45,000.00, and they are subject to mortgages in the total amount of $112,528.00. The Palm Coast, Florida, property was purchased in 1975 for $6,700.00, but is scheduled as having a value of only $1,000.00. It is not subject to any liens. In the Schedules, the Defendant lists only a nominal amount of personal property that totals $1,650.00. On the Statement of Financial Affairs, the Defendant disclosed six months of pre filing income associated with the lock shop business ($3,000.00), insurance sales commissions ($5,200.00), and rental income ($2,400.00).

The Defendant detailed in his budget filed with the Court net monthly income in the amount of $1,699.00. This includes insurance sales commissions in the amount of $600.00, rental income in the amount of $532.00, and social security income in the amount of $567.00. Monthly expenses disclosed total $4,896.00, that includes $2,500.00 toward credit card obligations and $1,000.00 to the Plaintiff. If we delete these expenses on the theory that they are subject to the discharge, the monthly expenses would be reduced to $1,396.00. This would result in monthly net income of $303.00 to pay the Plaintiff, at least ac-

---

1. The Court has treated the promissory note as part of the property settlement agreement obligation because it emanates from the Agreed Entry.

cording to the Defendant's budget filed with the Court.

As identified by the Plaintiff, and as revealed during the trial, some information contained in the schedules, statement of affairs and budget is not accurate and complete. For example, the Defendant failed to show gross revenues for the last two years concerning his insurance, lock shop, and rental business enterprises, as required by Question 1 of the Statement of Affairs. The Defendant failed to disclose income received from his sale of property on Kilbourne Avenue during the two years before filing, as required by Question 2 of the Statement of Affairs. The inventory for the lock shop business was not disclosed in response to Question 18 of the Statement of Affairs or on Schedule B— Personal Property. During the trial, the Defendant acknowledged these oversights but characterized them as innocent mistakes, rather than attempts to conceal assets. Based upon this Court's assessment of the credibility of the Defendant; it has concluded that these deficiencies are based upon mistakes that timely amendments should have corrected, rather than intentional efforts to conceal assets or mislead creditors.

Besides these errors and omissions, the Defendant's budget filed with the Court does not present a complete and accurate picture of his financial condition. For example, two additional mortgage obligations on the Sinclair Road properties, in the approximate amount of $900.00 per month, are not listed. Utilities in the approximate amount of $400.00 per month and maintenance expenses in the approximate amount of $150.00 per month for the rental property, are not listed. The Defendant, who is seventy-three years of age, testified that his medical and dental expenses total $100.00 per month, rather than the sum of $20.00 per month detailed on the budget.

When these expenses are factored in, the Court is unable to determine any definite sum the Defendant can pay the Plaintiff. On the other hand, the Court is unable to determine whether the Defendant's financial condition might be improved through the acquisition of an unsubsidized, market-rate tenant for the rental property. Without more current information for the real property, it is impossible to determine fair market value and any potential equity to fund continued payments to the Plaintiff through a sale or refinancing.

By contrast, the financial picture of the Plaintiff presented during the trial is straightforward. She is currently sixty years old, and because of back difficulties is unable to work. The Plaintiff's sole source of income is monthly social security disability payments in the amount of $531.00. She does not own any real estate, but lives with and helps care for elderly parents. The plaintiff testified that her monthly expenses total approximately $601.00, including utilities ($271.00), food ($60.00), a storage fee for her furniture from the marital home ($93.00), auto insurance ($27.00), medical expenses ($50.00), and transportation expenses ($100.00).

The instant litigation presents essentially two questions. First, should the Court deny the Defendant a general discharge of all indebtedness based on deficiencies in his maintenance of financial records and his inability to satisfactorily explain the deficient nature of his assets and any losses? Second, if the Defendant is entitled to a general discharge, should his obligation to the Plaintiff be excepted either based on his inability to pay or on the basis that any harm to the Plaintiff outweighs the benefit to the Defendant?

Regarding the issue of whether the Defendant is entitled to a general discharge, section 727(a)(3) and (5) of the

Code governs.[2] A review of case law shows that objections to discharge are to be strictly construed against the objecting party and liberally construed in favor of debtors to promote the penultimate goal of bankruptcy—providing a "fresh start" to honest debtors. *In re Gannon*, 173 B.R. 313, 316 (Bankr.S.D.N.Y.1994); *In re Stanke*, 234 B.R. 449, 456 (Bankr.W.D.Mo. 1999). Objections to discharge must be established by a preponderance of the evidence, and the Movant must carry the burden. *In re Gannon* at 316–17; *In re Stanke* at 456; *Barclays/American Business Credit, Inc. v. Adams (In re Adams)*, 171 B.R. 298, 303 (W.D.Tn.1992), *aff'd* 31 F.3d 389 (6th Cir.1994), *cert. denied* 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995); FRBP 4005.

■■■ The party alleging a violation under sec. 727(a)(3) of the United States Bankruptcy Code, must initially establish that the books and records are inadequate, and then the burden of production shifts to the debtor to explain any deficiencies. *In re Wynn*, 261 B.R. 286, 299 (Bankr. M.D.Ala.2001). The underlying statutory goal is to require an accurate presentation of the debtor's financial affairs as the *quid pro quo* for a discharge. *In re Wynn* at 299. There is no statutory requirement, however, that the debtor maintain particular types of records, or that the records are maintained in perfect condition. The records must sufficiently identify transactions to facilitate creditors' inquiries. *In re Wynn* at 299–300. At a minimum, there must be written evidence of the debtor's present financial condition and for a rea-

sonable period in the past. *In re Wynn* at 300. Factors that courts may consider include: (a) the debtor's educational background and level of sophistication; (b) the debtor's personal financial structure; and (c) the debtor's business experience and the size and complexity of any business. *In re Wynn* at 300; *In re Strbac*, 235 B.R. 880, 882 (6th Cir. BAP 1999).

■■■ Where a creditor alleges a violation under sec. 727(a)(5) of the United States Bankruptcy Code, the creditor must produce evidence to establish that the debtor had an interest in identifiable property for a reasonable period before filing. It is not enough to merely allege a loss— there must be specifics. *In re Mezvinsky*, 265 B.R. 681, 689 (Bankr.E.D.Pa.2001). Once this initial burden of going forward has been satisfied, then the burden of production shifts to the debtor to satisfactorily explain losses or deficiencies. *In re Mezvinsky* at 689. In making such judgment calls, courts are not to be concerned with whether any disposition has been proper under the Bankruptcy Code, but whether or not the explanation provides a satisfactory description of what happened. *In re Mezvinsky* at 690. Therefore, when debtors are faced with an objection to discharge, they must produce or gather documents that they might not ordinarily keep and/or employ accountants to explain losses. *In re Mezvinsky* at 690–91.

■■■ Based upon a review of the evidence and assessment of the Defendant's credibility, the Court has concluded that the Plaintiff has sustained her initial bur-

**2.** Sections 727(a)(3) and (5) provide in relevant part as follows:

The court shall grant the debtor a discharge, unless-
(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information ... from which the debtor's financial condition or

business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
. . .
(5) the debtor has failed to explain satisfactorily, ... any loss of assets or deficiency of assets to meet the debtor's liabilities; . . . .

den under section 727(a)(3) and (5) of the Bankruptcy Code. This has been accomplished primarily by identifying the many deficiencies and errors in the schedules, statement of financial affairs and budget that were filed on behalf of the Defendant. During the trial, however, the Defendant through his own testimony and that of his accountant, satisfactorily explained the deficiencies and presented a more accurate and complete picture of his financial condition. Through these means, the Court can ascertain real property that was sold pre petition, the status of the defunct lock shop business, and the income and expenses associated with the rental property.

The Court has gleaned from these sources, for example: (a) that the lock shop business was not profitable and should have been closed earlier; (b) that the Defendant had considerable expenses to repair the rental property after a former tenant abandoned it; (c) that his insurance sales commissions have been reduced by changes in the industry and the merger of several companies; (d) that the Defendant relied heavily upon credit cards to defray his expenses, including obligations to the Plaintiff; and (e) that the Defendant at the age of seventy-three lives a Spartan lifestyle. The Court concludes that the Defendant has supplied satisfactory explanations. This is a case of innocent, incomplete and inaccurate disclosure of financial information, rather than an instance of concealment of assets or destruction of financial records. The Court concludes that the Defendant is entitled to receive a general discharge.

 The issue of whether the obligations to the Plaintiff should be excepted from the discharge pursuant to section 523(a)(15)(A) and (B)[3] of the Bankruptcy Code is more complicated. As with objections to discharge, exceptions to discharge are to be construed strictly in favor of debtors. *In re Henrie*, 235 B.R. 113, 119 (Bankr.M.D.Fla.1999). In its 1994 enactment of section 523(a)(15)(A) and (B), Congress, however, was primarily concerned with enhancing protections for former spouses and dependents.

 As noted by one commentator:

In enacting sec. 523(a)(15), *Congress recognized the erosion of the distinction between support awards and property settlements in state court divorce proceedings.* For example, a debtor's ex-spouse may have bargained for a higher property settlement in exchange for a lower support award; when the debtor goes into bankruptcy, *a bankruptcy judge may erroneously determine that the "property settlement" obligation is a property division dischargeable under sec. 523(a)(5), while it is actually a support obligation in nature as part of the support award.* This problem is the very reason why Congress enacted sec. 523(a)(15). *(It) was intended to cover divorce settlements which could not comfortably be classified as "support obligations" under sec. 523(a)(5), so that deserving ... ex-spouses could receive*

---

**3.** Section 523(a)(15)(A) and (B) provides in relevant part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(15) ... that is incurred by the debtor ... in the course of a divorce ... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent ... and if the debtor is engaged in a business, for the payment of expenditures necessary for the ... operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a ... former spouse ...

*some protection when it is hard to determine whether the debt is a "support obligation" or a "property division."* Hui Yu, "Allocating the Burden of Establishing Nondischargeability in Bankruptcy of Property Settlement Obligations Under Sec. 523(a)(15)," 83 Iowa L. Rev. 861 (1998). (emphasis supplied)

■ Once the creditor establishes that the obligations are a part of a property settlement, as opposed to a support obligation, the debtor bears the burden of establishing by a preponderance of the evidence that he is entitled to a discharge. This is accomplished by showing either that the debtor cannot pay the property settlement (sec. 523(a)(15)(A) "ability to pay test"), or that the benefits of their discharge outweigh any detriment to the former spouse (sec. 523(a)(15)(B) "balancing test"). *In re Henrie* at 119; *In re Molino,* 225 B.R. 904, 907 (6th Cir. BAP 1998); *In re Grindstaff,* 254 B.R. 706, 709 (Bankr.S.D.Oh.2000).

■ Regarding the ability to pay test, the analysis mirrors that used for establishing disposable income in a chapter 13 case. James H. Cossitt, "A Matter of Jurisdiction," 26 DEC. Mont. Law. 24, 27 (2000). Specifically, the factors to be considered include: (a) the debtor's financial condition at or about the time of trial; (b) the debtor's future earning potential; (c) efforts the debtor may have made to pay the obligation at issue; (d) the identification of any income that is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent; (e) any factors that may lessen the debtor's burden of debt; and (f) the amount of the indebtedness the debtor asks to discharge. *In re Henrie* at 120; *In re Miley,* 228 B.R. 651, 656 (Bankr. N.D.Oh.1998). *In re Barnes,* 218 B.R. 409, 411 (Bankr.S.D.Oh.1998). It has also been held that if the amount owed is so great, a portion may be discharged similar to the analysis for the dischargeability of student loans under sec. 523(a)(8) of the Bankruptcy Code ("undue hardship" provision). *In re Miley* at 656; *In re Perkins,* 221 B.R. 186, 190–91 (Bankr.N.D.Oh.1998).

■ In applying the ability to pay test to the instant case, the Court must conclude that the Defendant has failed to sustain his burden by a preponderance of the evidence for several reasons. First, without current information for the real property, it is impossible to determine fair market value and any equity that the Defendant could tap through refinancing or sale. Second, the Court has not been supplied with sufficient data regarding the value of the lock shop equipment or inventory. Third, it is not clear that the Defendant's continued participation in the Section 8 rental program represents the highest and best use of the rental property. Fourth, the Court is unable to determine whether the Defendant's expenses could be reduced by the liquidation of all the real estate and his rental of a modest apartment. In sum, when one applies a disposable income analysis, there are areas that could be modified that may yield income sufficient at least to pay some amount to the Plaintiff. The Court recognizes that the Defendant has paid a substantial sum, and that given his age it is not likely that he can pay the entire balance. It is the burden of the Defendant, however, to provide sufficient evidence to establish an inability to pay, either in full or in part.

■ Regarding the balancing test, the Court also concludes that the Defendant has failed to sustain his burden by a preponderance of the evidence for primarily two reasons. First, there is a significant asset and income disparity between the parties. The Defendant currently owns three parcels of real estate, while the

Plaintiff owns none. The Defendant has three sources of income, insurance sales, rental income and social security, while the Plaintiff has only one—social security disability. Second, the Defendant will be discharging more than $140,000.00 in unsecured indebtedness and leave bankruptcy with his real property and monthly income free from unsecured creditors' attachment. By contrast, the Plaintiff will be left with only $531.00 per month in disability income, most of which is used to defray living expenses with her elderly parents. Under these circumstances, the Court must conclude that the detriment of the discharge to the Plaintiff outweighs the benefit to the Defendant.

Accordingly, the Court has concluded that the Defendant is entitled to receive a general discharge. The Court has also concluded, however, that the Defendant's obligation to the Plaintiff, under the property settlement agreement and the related promissory note, shall be excepted from the discharge.

**IT IS SO ORDERED.**